MICHAEL S. PENBERTHY *et al.*, Plaintiffs-Appellees, v. DOROTHY PRICE, Independent Adm'r of the Estate of Robert E. Kenly, Deceased, Defendant-Appellant (Page III, Inc., d/b/a Top of the Hill Tavern, *et al.*, Defendants).

Fifth District   No. 5—95—0144

Opinion filed May 30, 1996.

David C. Laurent and Stephen C. Mudge, both of Reed, Armstrong, Gorman, Coffey, Gilbert & Mudge, P.C., of Edwardsville, for appellant.

M. Keith Smith, of Mt. Vernon, Jon E. Rosenstengel, of Bonifield & Rosenstengel, of Belleville, and Edward J. Kionka, of Carbondale, for appellees.

JUSTICE MAAG delivered the opinion of the court:

This case arises from a motor vehicle accident in which an allegedly intoxicated Robert E. Kenly, while operating a vehicle, crossed the centerline and collided with a vehicle driven by Michael S. Penberthy. Both Penberthy and his passenger, David C. Walpole, were injured. Kenly died from his injuries.

The plaintiffs, Michael S. Penberthy and David C. Walpole, filed a six-count complaint in the circuit court of St. Clair County against the defendants, the estate of Robert E. Kenly (Estate) and Page III, Inc. (Page). The plaintiffs' actions against the Estate were premised on the theories of negligence and wilful and wanton behavior. The complaint alleged a single act of wilful and wanton misconduct on the part of Robert Kenly: "He operated his motor vehicle on a public roadway when he was so intoxicated so as to be entirely unable to control his motor vehicle." The plaintiffs' actions against Page were based on the Dramshop Act. Ill. Rev. Stat. 1989, ch. 43, par. 135 (now 235 ILCS 5/6—21 (West 1994)).

On March 19, 1991, the plaintiffs amended their complaint, adding four more counts under the Dramshop Act. Two of these counts were against defendant Louis T. Romanik, d/b/a American Legion Stookey Post 1255, and the other two counts were against Alton E. Harper, d/b/a American Legion Stookey Post 1255.

The Estate filed an answer to the complaint. The Estate later filed a motion to dismiss counts II and V (the wilful and wanton counts), alleging that the Survival Act (Ill. Rev. Stat. 1989, ch. 110$^1$/$_2$, par. 27—6 (now 755 ILCS 5/27—6 (West 1994))) only allows the recovery of compensatory damages where either the victim or the tortfeasor is deceased. Thereafter, the plaintiffs sought leave of court pursuant to section 2—604.1 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—604.1 (now 735 ILCS 5/2—604.1 (West 1994))) to make a claim for punitive damages. Following briefing and argument, the court entered an order granting the plaintiffs leave to seek punitive damages. The Estate's motion to dismiss was denied.

Defendants Romanik and Harper each filed a motion for summary judgment as to the dramshop actions. The trial court granted the motions.

Prior to trial, the plaintiffs settled their claim against Page. Because of the partial settlement and prior summary judgments entered by the court, the case proceeded to trial with the Estate as the sole defendant.

A jury trial was held, and on September 15, 1994, the jury returned verdicts awarding compensatory damages to plaintiff Walpole in the amount of $191,392.06 and to plaintiff Penberthy in the amount of $578,362.52.

On September 16, 1994, the jury returned a verdict awarding punitive damages against the Estate in the amount of $100,000.

The Estate filed a post-trial motion asking the court to set aside or reduce the punitive-damage award or, in the alternative, grant the defendant a new trial. The Estate's post-trial motion was denied. The Estate filed a timely notice of appeal.

The Estate contends that punitive damages were improperly awarded to the plaintiffs in this case, claiming that punitive damages are not recoverable from a deceased tortfeasor's estate. We believe that it is important to begin this discussion by tracing the growth of the law on the subject of survival of actions.

■ "The common law of England *** shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority." 5 ILCS 50/1 (West 1994). At common law, personal actions, arising *ex delicto*, died with the person and did not survive to the representatives. *Holton v. Daly*, 106 Ill. 131, 136 (1882), *overruled on other grounds in Murphy v. Martin Oil Co.*, 56 Ill. 2d 423, 308 N.E.2d 583 (1974); see also *McDaniel v. Bullard*, 34 Ill. 2d 487, 493, 216 N.E.2d 140, 144 (1966). "Under the common law rule the death of either party at any stage of the proceedings abated the action." *Wilcox v. Bierd*, 330 Ill. 571, 583, 162 N.E. 170 (1928). Blackstone stated that " 'in actions merely personal, arising *ex delicto*, for wrongs actually done or committed by the defendant, *** the rule is, that *actio personalis moritur cum persona* [a personal right of action dies with the person]; and it never shall be revived, either by or against the executors or other representatives,—for neither the executors of the plaintiff have received, *nor those of the defendant have committed, in their own personal capacity, any manner of wrong and injury.*' " (Emphasis added.) *Holton*, 106 Ill. at 136. In 1872, a statute was passed allowing, in addition to the actions that survived by the common law, certain actions therein named, including "actions to recover damages for an injury to the person, except slander and libel." *Holton*, 106 Ill. at 139. This statute, commonly known as the Illinois Survival Act (755 ILCS 5/27—6 (West 1994)), allows an "action to recover damages for an injury to the person." Under Illinois law, punitive damages are not generally recoverable under the Survival Act in actions based solely upon the common law. *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 117, 499 N.E.2d 1373, 1377 (1986); *Mattyasovszky v. West Towns Bus Co.*, 61 Ill. 2d 31, 33, 330 N.E.2d 509,

511 (1975). There are exceptions to this rule which will be discussed later in this opinion. The line of Illinois Supreme Court cases including *Mattyasovszky, National Bank v. Norfolk & Western Ry. Co.*, 73 Ill. 2d 160, 383 N.E.2d 919 (1978), and *Froud v. Celotex Corp.*, 98 Ill. 2d 324, 456 N.E.2d 131 (1983), sets forth guidelines for the recovery of damages by a decedent's estate. Even though all three cases dealt with a deceased plaintiff rather than a deceased tortfeasor defendant, we nevertheless find them to be instructive in this case.

In *Mattyasovszky*, the Illinois Supreme Court stated: "[The survival] statute has never been thought to authorize the award of punitive damages. *** We find nothing *** which suggests a change in the law of this State which for more than a hundred years has limited recovery under the Survival Act to compensatory damages." *Mattyasovszky*, 61 Ill. 2d at 33, 330 N.E.2d at 510. The *Mattyasovszky* court held that the survival statute does not allow the transfer of a punitive-damage claim to the decedent's estate because punitive damages are meant to deter and punish and do not fall within the language "damages for an injury to the person." *Mattyasovszky*, 61 Ill. 2d at 33, 330 N.E.2d at 510.

The Illinois Supreme Court, in *National Bank*, allowed the recovery of punitive damages in an action brought under the Public Utilities Act (Ill. Rev. Stat. 1969, ch. 111²/₃, par. 77), as distinguished from the common law. The *National Bank* court stated: "Here, in contrast to *Mattyasovszky*, punitive recovery was sought, not under the common law, but directly under the Public Utilities Act, which expressly provides that 'if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by way of punishment.' (Ill. Rev. Stat. 1969, ch. 111²/₃, par. 77.) The Survival Act itself neither authorizes nor prohibits punitive damages. It is merely the vehicle by which the cause of action, created by the Public Utilities Act, survives the death of the injured person when the action would otherwise have abated at common law." *National Bank*, 73 Ill. 2d at 173-74, 383 N.E.2d at 924. This quotation from *National Bank* explains the reason that a punitive-damage claim was held to survive in that case. The claim there was based upon an express statutory authorization. The claim was not based *solely* upon the common law.

In *Froud*, 98 Ill. 2d 324, 456 N.E.2d 131, the Illinois Supreme Court reaffirmed the *National Bank* and *Mattyasovszky* holdings with regard to the survival of punitive-damage claims. The *Froud* court explained that when there is no statutory basis for the award of punitive damages that is comparable to the provisions of the Public Utilities Act, *Mattyasovszky* is the controlling precedent. The

*Froud* court stated: "We are unwilling to accept the plaintiffs' invitation to overrule *Mattyasovszky* and add to the scope of the Survival Act by including within it common law claims for punitive damages based upon an injury to the person." *Froud,* 98 Ill. 2d at 335, 456 N.E.2d at 136.

In 1986, the Illinois Supreme Court confirmed its earlier holdings in *Mattyasovszky* and *Froud* and suggested that any change in the law should be brought about by the State legislature rather than the courts. See *Ballweg,* 114 Ill. 2d at 117-18, 499 N.E.2d at 1377-78.

Although not cited by either party, there are exceptions to the *Mattyasovszky* decision. *Raisl v. Elwood Industries, Inc.,* 134 Ill. App. 3d 170, 479 N.E.2d 1106 (1985), and *Howe v. Clark Equipment Co.,* 104 Ill. App. 3d 45, 432 N.E.2d 621 (1982), are instructive. The *Raisl* court held that in an action for retaliatory discharge, under the Workers' Compensation Act, where both compensatory and punitive damages were sought, the punitive-damage claim survived the death of a discharged employee. The *Raisl* court held that there are two exceptions to the general rule of abatement of punitive-damage claims: (1) when a statutory basis exists for such claims or when such claims are an integral component of the regulatory scheme and of the remedy which is available under it; or (2) when strong equitable considerations favor survival. *Raisl,* 134 Ill. App. 3d at 175, 479 N.E.2d at 1110 (citing *Mattyasovszky, National Bank,* and *Froud*). The *Raisl* court reasoned that because the tort of retaliatory discharge under the Workers' Compensation Act is based upon a statutory scheme, and because our supreme court has held that punitive damages are a necessary part of the remedy, the punitive-damage claim should survive. Because punitive damages have been held to be such an integral part of a cause of action for retaliatory discharge (*Kelsay v. Motorola, Inc.,* 74 Ill. 2d 172, 384 N.E.2d 353 (1978)), the *Raisl* court held that strong equitable considerations also favored the survival of the punitive-damage claim. *Raisl,* 134 Ill. App. 3d at 175-76, 479 N.E.2d at 1110-11.

In *Howe,* the administrator of the decedent's estate filed a complaint against the defendant based on strict liability. One count sought punitive damages for personal injuries sustained prior to decedent's death. The trial court dismissed this count, stating that there is no right to punitive damages under the Survival Act. The *Howe* court relied on *National Bank* and reversed the trial court, finding that the lower court was incorrect in dismissing the punitive-damage count. The *Howe* court held that the *National Bank* case stood for the proposition that the Survival Act is only a conduit whereby a cause of action possessed by the decedent may be prose-

cuted by his personal representative and that if statutory causes of action for punitive damages survive, by logical extension, there is no bar to similar common law causes of action.

■ More recently, the court in *Grunloh v. Effingham Equity, Inc.*, 174 Ill. App. 3d 508, 528 N.E.2d 1031 (1988), considered the issue of whether a punitive-damage claim was assignable. Because assignability and survivability of the claim frequently involve the same considerations, the court reviewed the factors that are important to such a determination. The court stated:

> "The factors generally considered in determining whether an action for punitive damages survives are: (1) whether under ordinary circumstances the requested punitive damages have a statutory basis or are an integral component of a regulatory scheme and the remedy available thereunder; and (2) whether strong equitable considerations favor survival of an action for punitive damages. Matters which are relevant in considering the second of the above factors include whether the defendant's alleged conduct offends against a strong and clearly articulated public policy; whether the underlying conduct constituted intentional misconduct, which is also a crime, instead of mere wilful and wanton conduct, which shades into simple negligence; and whether absent an award of punitive damages, a plaintiff who prevailed on the merits of his or her claim would at most be entitled to only a comparatively small recovery." *Grunloh,* 174 Ill. App. 3d at 519, 528 N.E.2d at 1037-38.

Punitive damages in this case cannot be said to have a statutory basis as in *National Bank*, nor can they be said to be an integral part of a regulatory scheme and remedy as in *Kelsay*. Thus, the first factor for consideration does not apply. We believe that the second factor does apply.

■ Defendant's conduct, driving under the influence of alcohol, unquestionably offends against a strong and clearly articulated public policy. Moreover, the underlying conduct is also a crime. These factors are sufficient in our judgment to satisfy the requirements for survivability. There is no doubt that these strong equitable considerations justify the survival of the punitive-damage claim against the defendant's estate.

In *Kochan v. Owens-Corning Fiberglass Corp.*, 242 Ill. App. 3d 781, 797, 610 N.E.2d 683, 693 (1993), this court stated that punitive damages serve as punishment for the defendant and are designed to promote three purposes: "(1) to act as retribution against the defendant; (2) to deter the defendant from committing similar wrongs in the future; and (3) to deter others from similar conduct."

It is important to note that one of the purposes of awarding puni-

tive damages is to punish the wrongdoer where the act was malicious or wilful and to deter him from committing similar wrongful acts in the future. Contrary to plaintiffs' assertions at oral argument, the purpose is *not* to punish *conduct*. Rather, the purpose is to punish *persons* for *engaging in conduct*. Because we cannot follow a tortfeasor into his grave and impose punishment upon him, the first rationale for the imposition of punitive damages cannot be met.

If a tortfeasor is dead, the need to deter like conduct on his part in the future is also lost. Deceased tortfeasors rarely repeat their wrongful acts. Thus, the second rationale fails.

There is no doubt, however, that allowing punitive damages to survive against a deceased defendant would serve as a deterrent to others. This deterrent effect justifies, in our opinion, allowing the punitive action to survive, particularly in view of the strong public policy against mixing alcohol and automobiles.

In light of the foregoing considerations, we affirm the judgment of the circuit court of St. Clair County awarding punitive damages to plaintiffs and against the Estate. Because no issues are raised as to the award of compensatory damages, we affirm that portion of the circuit court's judgment.

Affirmed.

CHAPMAN and WELCH, JJ., concur.