G.J.D. and D.K., a Minor, by G.J.D., His Parent and Natural Guardian, and J.K., a Minor, by G.J.D., Her Parent and Natural Guardian, Appellees,

v.

Geraldine T. JOHNSON, Executrix of the Estate of Darwin T. Thebes, Deceased, Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 11, 1996.

Decided June 26, 1998.

---

24. Notably, Blasioli did not challenge the admissibility of the statistical evidence calculated using the ceiling principle.

25. This method is simply an enumeration of how many times an event occurred in a given set of observations.

26. There is a split among *Frye* jurisdictions as to whether the test should be applied to determine

general agreement in the scientific community as of the time of trial or as of the time of appellate review. *Compare Lindsey,* 892 P.2d at 291 n. 25, with *State v. Bible,* 175 Ariz. 549, 858 P.2d 1152, 1189 n. 33 (1993), *cert. denied,* 511 U.S. 1046, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994). As noted above, we find the evidence in this case sufficient to establish general acceptance as of the time of trial.

William C. Costopoulos, Lemoyne, for Geraldine T. Johnson.

Richard C. Ruben, Harrisburg, for Gloria Jean Diehl.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION

ZAPPALA, Justice.

We granted allocatur to determine whether punitive damages may be recovered from the estate of a deceased tortfeasor. We hold that such damages may be recovered, and therefore affirm.

Appellee G.J.D. and Darwin Thebes were involved in an intimate relationship for approximately five years. During that time Thebes took sexually explicit photographs[1] of G.J.D. which he then kept hidden. G.J.D. did not see the photographs until several years later after she had ended her relationship with Thebes.

G.J.D. alleged that Thebes distributed photocopies of the photographs throughout the community when he learned she was ending their relationship. The photocopies included G.J.D.'s address and phone number as well as captions which implied that she was a prostitute. The distribution of the photocopies was calculated to ensure that they would be found by G.J.D.'s friends and relatives including her minor children, her mother, her brother, and her employer. The distribution of the photocopies ended when G.J.D. filed a complaint against Thebes containing counts of defamation, intentional infliction of emotional distress, false light invasion of privacy, and invasion of privacy by publicity given to private life.

Before the case came to trial, Thebes committed suicide and his sister Geraldine Johnson, Appellant, as executrix of his estate, was substituted as defendant. The case was then tried before a jury which awarded both compensatory and punitive damages to G.J.D. and to her children as co-plaintiffs.[2]

The Superior Court upheld the award of damages, holding that where a tortfeasor dies after the suit is instituted but before the completion of trial, punitive damages may be assessed against the estate of the deceased tortfeasor.

On appeal, neither the decedent's culpability nor the award of compensatory damages is at issue. Appellant argues only that the recovery of punitive damages against the decedent's estate is improper because neither of the recognized policy objectives of punitive damages, punishment and deterrence, will be

---

**1.** One photograph depicted G.J.D. performing fellatio; the other photo portrayed her lying nude from the waist up.

**2.** The jury awarded G.J.D. $6,015.00 in compensatory damages and $36,500.00 in punitive damages. Her children were awarded a total of $15,000.00 in compensatory damages and $40,-000.00 in punitive damages.

fulfilled when the person to be punished and deterred is deceased.

▮ In Pennsylvania, the "function of punitive damages is to deter and punish egregious behavior." *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 169, 494 A.2d 1088, 1096 (1985) (citations omitted). Punitive damages may be imposed for "torts that are committed willfully, maliciously, or so carelessly as to indicate wanton disregard of the rights of the party injured." *Thompson v. Swank*, 317 Pa. 158, 159, 176 A. 211, 211 (1934). Punitive damages are not awarded as additional compensation but are purely penal in nature. *See Colodonato v. Consolidated Rail Corp.*, 504 Pa. 80, 470 A.2d 475 (1983); *Int'l Electronics Co. v. N.S.T. Metal Prod. Co.*, 370 Pa. 213, 88 A.2d 40 (1952).

Although the issue of whether the recovery of punitive damages is permitted against a deceased tortfeasor's estate is an issue of first impression in our Commonwealth, it has been addressed by the courts and legislatures of thirty-three jurisdictions. In twenty-eight of these jurisdictions recovery is not allowed. Fourteen states[3] have enacted legislation explicitly precluding such a recovery, and in the states which have no statutory bar

to recovery, the courts are split as to whether recovery will be allowed. The majority of courts that have addressed this issue have held that punitive damages may not be recovered from the estate of the tortfeasor.[4] The reasoning behind these decisions is essentially that the primary purposes of imposing punitive damages are not furthered when the tortfeasor is deceased. *See Allen v. Anderson*, 93 Nev. 204, 562 P.2d 487 (1977); *see also Woodner* at 940 (D.C.); *Thompson* at 408 (Minn.). These courts have found that the general deterrent element depends upon a perception by others that the tortfeasor is being punished. *See Parker* at 525 (Wyo.); *State Farm* at 449 (N.M.); *Lohr* at 846 (Fla.). They further reason that if it is the innocent estate and beneficiaries that are punished and not the tortfeasor himself, the general deterrent element becomes diffused and is speculative at best. *See Quackenbush* at 1521 (D.Kan.); *State Farm* at 449 (N.M.); *Lohr* at 846 (Fla.).[5]

Five states currently permit recovery of punitive damages from the estate of a deceased tortfeasor.[6] Some of the courts have based their decisions on policy considerations other than, or in addition to, the policy objec-

3. *California,* Cal.Civ.Proc.Code § 377.42 (West 1994); *Colorado,* Colo.Rev.Stat. § 13–20–101 (1987); *Georgia,* Ga.Code Ann. § 3–505 (1987); *Idaho,* Idaho Code § 5–327 (1990); *Maine,* Me. Rev.Stat. Ann. tit. 18–A, § 3–318 (West 1981); *Massachusetts,* Mass. Gen. Laws Ann. ch. 230, § 2 (West 1974); *Mississippi,* Miss.Code Ann. § 91–7–235 (1973); *Nevada,* Nev.Rev.Stat. § 41.100 (1979); *New York,* N.Y. Est. Powers & Trusts Law § 11–3.2(1) (McKinney 1981); *Oregon,* Or.Rev.Stat. §§ 30.080, 30.020 (1983); *Rhode Island,* R.I. Gen.Laws § 9–1–8 (1985); *Vermont,* Vt. Stat. Ann. tit. 14, § 1454 (1989); *Virginia,* Va.Code § 8.01–25 (1977); *Wisconsin,* Wis. Stat. Ann. § 895.01 (West 1983).

4. For the proposition that punitive damages may not be recovered from the estate of a deceased tortfeasor the following case law is representative of the jurisdictions that so hold: *Doe v. Colligan,* 753 P.2d 144 (Alaska 1988); *Braun v. Moreno,* 11 Ariz.App. 509, 466 P.2d 60 (1970); *Woodner v. Breeden,* 665 A.2d 929 (D.C.1995); *Lohr v. Byrd,* 522 So.2d 845 (Fla.1988); *Rowen v. LeMars Mut. Ins. Co.,* 282 N.W.2d 639 (Iowa 1979); *Fehrenbacher v. Quackenbush,* 759 F.Supp. 1516 (D.Kan.1991)(predicting Kansas law); *Johnson v. Levy,* 122 La. 118, 47 So. 422 (1908); *Thompson v. Estate of Petroff,* 319

N.W.2d 400 (Minn.1982); *Ford Motor Credit Co. v. Hill,* 245 F.Supp. 796 (W.D.Mo.1965)(predicting Missouri law); *State Farm Mut. Auto. Ins. Co. v. Maidment,* 107 N.M. 568, 761 P.2d 446 (App. 1988); *McAdams v. Blue,* 3 N.C.App. 169, 164 S.E.2d 490 (1968); *Morriss v. Barton,* 200 Okla. 4, 190 P.2d 451 (1947); *Hayes v. Gill,* 216 Tenn. 39, 390 S.W.2d 213 (1965); *Parker v. Artery,* 889 P.2d 520 (Wyo.1995).

5. The Restatement (Second) of Torts also does not allow the imposition of punitive damages against the estate of a deceased tortfeasor, *see* § 908 comment a (1979); § 926(b) (1979).

6. New Hampshire, in addition to the five states discussed, is considered by some to allow such damages. However, there is no consensus among legal scholars as to whether these damages are allowed or not. *See Vratsenes v. N.H. Auto Inc.,* 112 N.H. 71, 289 A.2d 66 (1972)(rejecting punitive damages in tort actions but allowing the award of liberal compensatory damages to compensate for the plaintiff's "vexation and distress" when the conduct in question was "wanton, malicious, or oppressive"). *See also Munson v. Raudonis,* 118 N.H. 474, 387 A.2d 1174 (1978)(allowing the recovery of such damages against the estate of a deceased tortfeasor).

tives recognized in Pennsylvania, those of punishment and deterrence of the tortfeasor.

For example, Texas courts have held that punitive damages include reimbursement for inconvenience, for attorneys' fees, and for losses too remote to be considered compensation. *Hofer v. Lavender*, 679 S.W.2d 470 (1984). In West Virginia, in addition to the traditional functions of punishment and deterrence, punitive damages are utilized to provide additional compensation to the victims of reckless and wanton conduct. *Perry v. Melton*, 171 W.Va. 397, 299 S.E.2d 8 (1982).

In Alabama, recovery of punitive damages from a deceased tortfeasor's estate is provided for by the Alabama Supreme Court's interpretation of the state's wrongful death statute. In *Shirley v. Shirley*, 261 Ala. 100, 73 So.2d 77 (1954), the court held that the general deterrent effect of punitive damages was sufficient justification under the state's wrongful death statute to allow such damages against a decedent's estate. The court in *Ellis v. Zuck*, 546 F.2d 643 (5th Cir.1977), relied on the reasoning in *Shirley* to hold that the recovery of punitive damages from estates is not limited to wrongful death actions. The *Ellis* court stated that all damages recoverable under a wrongful death action in Alabama are punitive and survive the death of the tortfeasor. The court further determined that the legislature intended to allow the recovery of punitive damages against a deceased tortfeasor's estate in order to deter others in similar situations. Therefore, the court concluded that punitive damages also survive the death of the tortfeasor and may be recovered from his estate in actions other than wrongful death actions.

Most recently, the courts in Montana and Illinois have also allowed recovery of punitive damages from a deceased tortfeasor's estate. The Montana Supreme Court interpreted that state's punitive damages statute according to the plain language of the statute. It provides that "a jury may award . . . punitive damages for sake of example and for the purpose of punishing the defendant." Mont. Code Ann. § 27–1–220 (1995). The court held that the appropriateness of imposing punitive damages in order to set an example to the public is a matter for the trier of fact to determine. *Tillett v. Lippert*, 275 Mont. 1, 909 P.2d 1158 (1996).

Finally, in Illinois, the court allowed punitive damages to be imposed against the estate of a deceased tortfeasor in *Penberthy v. Price*, 281 Ill.App.3d 16, 216 Ill.Dec. 902, 666 N.E.2d 352 (1996). There the court noted that in Illinois punitive damages serve to punish the tortfeasor and to deter the tortfeasor and others from engaging in like conduct. *Id.* at 21, 216 Ill.Dec. 902, 666 N.E.2d at 356. The court noted that the conduct in *Penberthy*, driving under the influence, presents important policy reasons for allowing punitive damages. The court held that the general deterrent effect combined with strong public policy against drunken driving justified the imposition of punitive damages. *Id.* at 22, 216 Ill.Dec. 902, 666 N.E.2d at 357.

A similar approach was taken by a Pennsylvania trial court in *Schwab v. Bates*, 12 Pa.D. & C.4th 162 (1991). In *Schwab*, the trial court granted punitive damages against the estate of a decedent who injured the plaintiff when he was driving while intoxicated. The *Schwab* court first noted that our courts have long recognized that the estate of a deceased plaintiff may recover punitive damages from a defendant. When determining whether the converse was true, the court weighed the possible harm that may be suffered by the family of the deceased defendant against the harm that could be prevented if driving while intoxicated is deterred. Finding that the interest in deterring drunk driving prevailed, the court concluded that the award of punitive damages was proper.[7] We are persuaded by this approach.

■ The interests involved here are distinct yet equally as significant as those in a case concerning drunk driving. By distribut-

---

7. The court expressly stated that it was making no determination as to whether or not punitive damages should be imposed against the estate of a defendant in cases involving other forms of conduct. However, in another Pennsylvania trial court opinion, *Morfesi v. Sherman*, 13 Pa.D. & C.4th 552 (1991), the court did not permit punitive damages to be imposed in a medical malpractice case on the ground that the resulting deterrent effect would be speculative.

ing photographs of G.J.D. performing sexual acts, Thebes unquestionably violated G.J.D.'s right to privacy, which is one of the most highly regarded rights in this Commonwealth. His distribution of these photographs, along with G.J.D.'s name, telephone number, and language indicating that she was a prostitute, is nothing short of outrageous. The dissemination of the materials followed a pattern of behavior whereby Thebes, while residing with G.J.D., physically and psychologically abused her and her children. Thebes's acts of domestic violence are no less egregious than drunk driving. To the extent that it may reasonably be done, the law should be applied so as to have a deterrent effect on such conduct.

 We note, however, that whether the law allows punitive damages to be assessed against the estate of a deceased tortfeasor does not depend on the category of tortious conduct involved in the case. Rather, we hold that there is no *per se* prohibition against imposing such punitive damages against an estate. The question of whether punitive damages are appropriate in a particular case should be resolved by the trier of fact considering the nature of the acts committed.

We base our decision on several reasons. First, the death of the tortfeasor does not completely thwart the purposes underlying the award of punitive damages. As noted, punitive damages are awarded to punish a defendant for certain outrageous acts and to deter him *or others* from engaging in similar conduct. *Kirkbride v. Lisbon Contractors Inc.*, 521 Pa. 97, 555 A.2d 800 (1989).[8] Although the decedent, Darwin Thebes, will not be punished or deterred from committing further perverse and egregious acts, the imposition of punitive damages upon his estate may serve to deter others from engaging in like conduct. The deterrent effect on the conduct of others is no more speculative in the instant case than in cases where the tortfeasor is alive.

Second, we are not persuaded by the proposition that imposing punitive damages will punish only the innocent beneficiaries of the estate. The heirs of the decedent tortfeasor are in essentially the same financial position as if the tortfeasor were living at the time damages were awarded. When punitive damages are awarded against a living tortfeasor, the award reduces the amount of the tortfeasor's assets, thus reducing the amount of funds available to the tortfeasor's family and ultimately reducing the amount of his estate. When a tortfeasor is deceased at the time punitive damages are awarded, the award directly reduces the amount of the estate. The actual difference between the effect of the punitive damages award on the deceased tortfeasor's heirs and a living tortfeasor's family is minimal. To allow a tortfeasor's estate to escape payment of punitive damages would be comparable to the injustice of allowing a defendant to transfer his wealth to his prospective heirs and beneficiaries prior to the trial of a case in which punitive damages are sought against him.

Finally, safeguards exist to protect against the arbitrary imposition of punitive damages. The jury can be instructed, as was done in the instant case, that the award of punitive damages is being imposed against the estate. Pennsylvania Suggested Standard Jury Instruction (Civ.) § .14.01 provides for the availability of punitive damages against the estate of a deceased tortfeasor. The jury can then consider the value of the deceased tortfeasor's estate in arriving at a proper assessment of punitive damages. In the event the award shocks the conscience of the court, the trial court may grant a remittitur.

Accordingly, for the reasons set forth herein, the order of the Superior Court is affirmed.[9]

FLAHERTY, C.J., files a Dissenting Opinion.

8. Punitive damages are also referred to as "exemplary damages" which have been defined as damages awarded "to punish the defendant for his evil behavior or to make an example of him." Blacks Law Dictionary 390 (6th ed.1990).

9. We further deny Appellant's "Motion to Strike the Brief of Appellees for Making Reference to and Including Materials From Matters Not of Record in This Case in Violation of Pa.R.A.P. 1921."

FLAHERTY, Chief Justice, dissenting.

The majority correctly states that in Pennsylvania the objectives of punitive damages are punishment and deterrence of the tortfeasor or others. Yet in the face of conclusions by the overwhelming majority of jurists and legal scholars who have considered this matter, the majority, in my view, incorrectly concludes that punitive damages are recoverable from a deceased tortfeasor's estate. This conclusion rests primarily on the unsupported assertions that even though dead tortfeasors can be neither punished nor deterred, imposing punitive damages on their estates *may* serve to deter others and that this deterrent effect is no more speculative than when the tortfeasor is still alive. The very fact that such damages may (or may not) deter others renders this hoped for general deterrent effect purely speculative.

Citing established Pennsylvania case law, Mr. Justice Zappala has observed that punitive damages are "purely penal in nature." This penal nature of punitive damages results in the availability of a quasi-criminal sanction in civil proceedings. That is, unlike civil compensatory damage awards which serve to compensate those who have been wronged for injuries sustained, punitive, or exemplary, damages impose punishment and make an example of the offender, a function normally reserved for criminal law.

The specific and general deterrent effects of punitive damages are inextricably linked to this quasi-criminal penal nature. The tortfeasor is specifically deterred because of the punishment of some penal sanction imposed directly upon him, and other potential tortfeasors may be generally deterred because they are made aware of a risk of such sanctions being imposed directly upon them through observation of the punishment of others. There is little question that one who has been sufficiently punished for wrongdo-ing will be deterred from undertaking similar acts in the future. However, the effectiveness of general deterrence upon potential future wrongdoers is highly questionable and dependant upon numerous, sometimes intangible, variables.

The most obvious factor upon which general deterrence depends is that in order for a potential wrongdoer to be effectively deterred by some penal sanction he must be aware that the sanction exists. In other words, this potential tortfeasor must have had an exemplary experience where he became aware of the consequences of certain acts by witnessing, as an example, the punishment of those held responsible for like acts.

One aspect of this awareness is the certainty that one's actions will result in punishment. In fact, in studies of the effectiveness of punishment as a general deterrent, both legal and behavioral commentators have concluded that the certainty of punishment has a far more significant impact on deterrence than the severity of the penalty.[1] That is, in order to be deterred, a potential tortfeasor would have to possess a reasonable certainty that there is a high risk that his wrongdoing will be detected and held liable, first for compensatory and then for punitive damages.

This assumes, of course, that the tortfeasor has rationally conducted a cost-benefit analysis of the potential consequences of his actions, knowing that even his untimely death will not insulate his potential heirs and estate creditors from paying for his wrongdoing. Most wrongdoers, I suggest, do not give such consideration to their actions. For those who do, the risk of punishment is outweighed by the perceived benefit of their actions up to the point where the probability of punishment increases the risk factor to an unacceptable level; they believe they will get away

---

1. *See e.g.*, Michael K. Block & Vernon E. Gerety, *Some Experimental Evidence on Differences Between Student and Prisoner Reactions to Monetary Penalties and Risk*, 24 J. Legal Stud. 123 (1995); Daniel W. Shuman, *The Psychology of Deterrence in Tort Law*, 42 U. Kan. L. Rev. 115 (1993); and H. Frances Pestello, *Deterrence: A Reconceptualization*, 30 Crime & Delinq. 593 (1984). *Compare with* Panel On Research On Deterrent And Incapacitative Effects, *Report of the Panel*, Deterrence And Incapacitation: Estimating The Effects Of Criminal Sanctions On Crime Rates (Alfred Blumstein et al. eds.1978)(concluding that there is insufficient scientifically valid evidence to associate a general deterrent effect on those not directly sanctioned with increases in the severity or certainty of imposition of penal sanctions), *and* Dan B. Dobbs, Handbook on the Law of Remedies (1973)(stating that punitive damages have not been shown to be effective deterrents).

with it. To illustrate, most drivers are aware that exceeding the speed limit is punishable by fines in proportion to the excess in speed. To use an example, many drivers, in order to save some time, are willing to take a chance and exceed the posted limit up to the point that the probability that they will be caught and fined exceeds any perceived benefit of time saved. They are unwilling to go any faster, not because of the severity of the penalty, but because they are more certain that they will be caught and a penalty will be imposed.

The ordinary reasonable person is aware that criminal behavior carries with it the commensurate risk of fines or imprisonment; however, the same cannot be said of the same person's awareness of the consequences of tortious conduct. Other than individuals who have had some exposure to legal matters, most people are simply unfamiliar with the concepts and processes of civil law. While they may have a vague idea that certain conduct might subject them to a civil suit, they do not truly understand the consequences of their potentially tortious actions other than the chance that they may be sued and "fined" in the form of damages; it is highly unlikely that the average individual distinguishes between compensatory and punitive damage awards. It is even less likely that such a person, even if aware of the difference between compensatory and punitive damages, would possess any reasonable level of certainty that his conduct will subject him, or his estate should he die, to punitive sanctions. Any deterrent effect he may experience is more likely to derive simply from the risk of having to defend himself in a lawsuit (along with the associated cost) and the potential of having to pay damages, without regard to whether they are compensatory or punitive.

It is precisely this lack of certainty, or even awareness in many cases, which leaves the effectiveness of punitive damages as a general deterrent nebulous and highly suspect. While it may be acceptable to use general deterrence as a justification of such damages when the actual tortfeasor is punished, such a hypothetical basis is insufficient justification for inflicting punishment on the innocent, hoping on the off chance that some potential tortfeasor may be deterred.

The majority attempts to bolster its conclusion by stating that they "are not persuaded by the proposition that imposing punitive damages [on a tortfeasor's estate] will punish only the innocent beneficiaries of the [estate, because the] heirs of the decedent tortfeasor are in essentially the same financial position as if the tortfeasor were living at the time damages were awarded." On its face this statement appears to be true; however, the underlying reasoning is fundamentally flawed. While it is true in a case like this that there is no difference between the amount of funds available to the future estate of a living tortfeasor and those available to the estate of the same tortfeasor who predeceases the award of punitive damages, the majority fails to grasp an important distinction.

In the first case it is the tortfeasor himself who is being directly punished. Any potential future heirs or estate creditors are being punished, if at all, only incidentally to the wrongdoer. Particularly, since he is not deceased they have no vested interest in his future estate; *nemo est haeres viventis* (a living person has no heirs)—they are not yet ascertained. Most importantly, the primary goals of punitive damages have been achieved. The tortfeasor has been punished and, presumably, deterred; he now serves as an example to others in the hope that they too may be deterred.

In the second case, the tortfeasor is not punished at all. Neither is he held out as an example to others. Instead, punishment is directly inflicted upon the subsequently ascertained and innocent heirs and creditors of the estate. Their interests in the estate attach at the time the tortfeasor dies.

However, a plaintiff's interest in compensatory damages attaches at the time the harm occurs, unlike his interest in punitive damages which do not attach until handed down by a jury.[2] If the tortfeasor should die

---

2. As this court has previously determined, "punitive damages are considered a 'windfall to the plaintiff and not a matter of right....'" *Colodonato v. Consolidated Rail Corp.*, 504 Pa. 80, 470

prior to the award of damages, the plaintiff's interest in compensatory damages has already attached and if he prevails in court he must then throw in his lot with the other estate creditors. However, his interest in punitive damages has not attached and any such recovery is at the expense of the already attached interest of the innocent beneficiaries and creditors of the estate. While this may seem a minor, pedantic distinction, to disregard it is antithetical to the fundamental notion of justice; our society does not punish the innocent for the wrongdoing of another.

This concept bears particular relevance to the imposition of punitive damages on a deceased tortfeasor's estate when considered in light of our previous holdings. In *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984), we reiterated that this court has embraced as a guideline § 908 of the Restatement (Second) of Torts. In addition to disallowing the recovery of punitive damages from a tortfeasor's estate, the Restatement sets forth factors which must be considered when punitive damages are sought. As this court held in *Feld, supra*, "one must look to the act itself together with all the circumstances including ... the relations between the parties...." *Id.* at 395, 485 A.2d at 748 (internal quotation marks omitted).[3]

In the present case, there is no relationship between the aggrieved party and the estate beneficiaries, the estate creditors, or even the estate itself, regardless of the loath-

some nature and egregiousness of Thebes' conduct. Neither the beneficiaries, the creditors nor the estate were responsible for that conduct. The only claim the aggrieved party has against the estate is the already vested interest in compensatory damages.

Punitive damages are quasi-criminal fines imposed upon civil defendants in a system which lacks the constitutional and procedural safeguards afforded criminal defendants. To inflict a quasi-criminal punishment upon these innocent parties on the basis of something as hypothetical and nebulous as general deterrence is illogical and manifestly unjust. The only difference between imposing criminal penalties on the survivors of deceased convicts and the imposition of punitive damages on a deceased tortfeasor's estate is that the tortfeasor's survivors cannot avail themselves of the constitutional protections afforded a convict's survivors. With this decision, this court continues to encourage juries to engage in the "unrestrained venting of their punitive impulses" warned against in *Kirkbride v. Lisbon Contractors Inc.*, 521 Pa. 97, 105, 555 A.2d 800, 804 (1989)(Flaherty, J. dissenting).

Therefore, I dissent.

---

A.2d 475, 479 (1983)(citing W. PROSSER, LAW OF TORTS § 2 at 9 (4th ed.1971)).

**3.** In addition to setting forth the standards for imposing punitive damages, this court has also cast a jaundiced eye upon the imposition of punitive damages on innocent parties. *See e.g., Feld, supra* (concluding that a party cannot be assessed punitive damages based upon the outra-

geous acts of others), and *Feingold v. Southeastern Pa. Transp. Auth.*, 512 Pa. 567, 517 A.2d 1270 (1986)(relying on *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), in disallowing the imposition of punitive damages on a municipality as a windfall to the plaintiff which punishes only innocent taxpayers).