**Billy Joe STEWART and Tammy Bowling Badgett, Appellants,**

v.

**ESTATE OF James E. COOPER, Betty Coomer Cooper, Executrix, and Westfield Companies, Appellees.**

No. 1999–SC–0963–DG.

Supreme Court of Kentucky.

April 24, 2003.

Michael J. Curtis, Ashland, Robert F. Duncan, Jackson & Kelly, Lexington, James D. Keffer, Ashland, for Appellants.

William P. Emrick, McKenzie, Woolery, Emrick & Webb, PSC, Ashland, for Appellees, Estate of James E. Cooper and Betty Coomer Cooper.

Mark Bramble, Kesner, Kesner & Bramble, Charleston, WV, for Appellee, Westfield Companies.

Opinion of the Court by Justice KELLER.

## I. INTRODUCTION

This matter presents an issue of first impression. Appellants suffered injuries in an automobile collision caused by a drunken driver, and later filed a lawsuit in which they sought compensatory and punitive damages. The driver, however, died before trial, and upon Appellants' motion, the trial court substituted the decedent driver's estate as a party defendant. The trial court then granted the estate's motion to dismiss Appellant's punitive damage

claim and ruled that KRS 411.184 does not authorize a punitive damage award against a party—such as the decedent driver's estate—that did not act toward Appellants with oppression, fraud, or malice. The Court of Appeals affirmed, and we granted discretionary review to consider whether, under Kentucky law, a plaintiff may recover punitive damages from a decedent tortfeasor's estate for the decedent tortfeasor's oppressive, fraudulent, or malicious conduct. We conclude that the answer to this question lies in the plain language of KRS 411.184(2), which limits punitive damages' availability to cases where the plaintiff proves "that the defendant *from whom such damages are sought* acted toward the plaintiff with oppression, fraud or malice."[1] Accordingly, we affirm the decision of the Court of Appeals.

## II. FACTUAL BACKGROUND

In October, 1992, James Cooper, while driving a vehicle under the influence of alcohol, caused an accident in which Appellants were injured. Appellants filed a lawsuit in Boyd Circuit Court in which they sought both compensatory and punitive damages from James Cooper, but James Cooper died before the case came to trial. However, on Appellants' motion, the trial court substituted the Estate of James Cooper ("the Estate"), Betty Coomer Cooper, Executrix,[2] as a party defendant. The Estate stipulated to its liability, but sought to limit both its compensatory damage exposure—by contesting the nature and extent of Appellants' injuries and by seeking an apportionment of fault for those injuries—and its punitive damage exposure—by arguing that Appellants could not recover punitive damages from the Estate for the

decedent's conduct. As to the question of punitive damages, the trial court held that the Estate did not act with the requisite oppression, fraud, or malice and granted the Estate's motion in limine asking it to dismiss the Appellants' punitive damages claim:

> [W]hen you review the punitive damages statute itself, it says that punitive damages are only to be recovered against a party who has committed either malice or acts of oppression.... [P]laintiffs are seeking to recover punitive damages from the Estate of James Cooper, [and] there's no evidence in the record that the Estate ... did anything that would amount to any kind of behavior that falls within the purview of the punitive damages statute.... So ... the punitive damages claim ... is not recoverable as an element of damages.

Appellants' remaining damage claims were tried before a jury, and the trial court entered judgment upon a jury's verdict that found Appellants entitled to compensation for past medical expenses and past pain and suffering, but apportioned to Appellants twenty percent (20%) of the responsibility for their injuries.

Appellants then appealed to the Court of Appeals, and argued that the trial court erred by failing to permit the jury to consider the issue of punitive damages. A divided panel of the Court of Appeals affirmed the trial court's ruling. We granted Appellants' Motion for Discretionary Review.

## III. ANALYSIS

In their brief to this Court, Appellants argue not only that the trial court

---

1. KRS 411.184(2).

2. Although Appellants' original Notice of Appeal correctly identified Betty Coomer Cooper's capacity as executrix of the Estate, Ap-

pellants' Motion for Discretionary Review failed to identify Betty Coomer Cooper's capacity, and thus the style of the case might appear misleading.

and the Court of Appeals misinterpreted KRS 411.184, but also argue in the alternative—employing an argument with which this Court is familiar[3]—that the lower courts' construction of KRS 411.184 violates the Kentucky Constitution's jural rights doctrine. We comment upon this argument, and briefly address it, at the outset of our analysis only to prevent Appellants' constitutional claim from detracting from our analysis of the only real issue before the Court—a question of statutory interpretation. To the limited extent that Appellants even articulated this constitutional argument to the trial court, we find that it has been procedurally defaulted by Appellants' failure to comply with KRS 418.075(1)'s procedural mandate that the Attorney General be notified of a constitutional challenge to the validity of a statute "before judgment is entered."[4] And, in any event, we observe that at oral argument before this Court, Appellants' counsel conceded that the jural rights doctrine was, in fact, inapplicable here because he could not cite the Court to *any* precedent demonstrating that the common law prior to Kentucky's current Constitution permitted recovery of punitive damages from a decedent tortfeasor's estate. Accordingly, in our view, the only issue before the Court is whether the trial court erred when it held that KRS 411.184 would not permit a punitive damages award against the Estate.

■ KRS 411.184(2) provides: "A plaintiff shall recover punitive damages *only upon proving* . . . that *the defendant from whom such damages are sought* acted toward the plaintiff with oppression, fraud, or malice."[5] KRS 411.184(1) defines terms utilized in the later subsection:

(d) "Plaintiff" means any party claiming punitive damages.

(e) "Defendant" means any party against whom punitive damages are sought.

(f) "Punitive damages" includes exemplary damages and means damages, other than compensatory and nominal damages, awarded against a person to punish and to discourage him and others from similar conduct in the future.[6]

Appellants argue that the Court should hold that KRS 411.184 permits recovery against a deceased tortfeasor's estate under the circumstances in the case at bar. Specifically, Appellants submit that, in interpreting KRS 411.184, the Court should give primacy to the public policies supporting punitive damage awards. And, Appellants argue that KRS 411.184(1)(f)'s "to discourage him and others from similar conduct in the future" language reflects that the General Assembly has made a policy determination that punitive damage awards deter similarly oppressive, fraudulent, or malicious conduct in the future by individual defendants and society-at-large.

■ We, however, find KRS 411.184(2) clear on its face and "[w]here there is no ambiguity in a statute, there is no need to resort to the rules of statutory construction in interpreting it. The words of the

---

**3.** *See Williams v. Wilson,* Ky., 972 S.W.2d 260 (1998) (holding that KRS 411.184(1)(c) is unconstitutional as a violation of jural rights to the extent that it changes the common law standard for awarding punitive damages); *Wittmer v. Jones,* Ky., 864 S.W.2d 885 (1993).

**4.** KRS 418.075(1). *See Adventist Health Systems v. Trude,* Ky., 880 S.W.2d 539, 542 (1994); *Maney v. Mary Chiles Hospital,* Ky.,

785 S.W.2d 480, 482 (1990) ("It is our view that KRS 418.075 is mandatory and that strict enforcement of the statute will eliminate the procedural uncertainty.").

**5.** KRS 411.184(2) (emphasis added).

**6.** KRS 411.184(1).

statute are simply accorded their commonly understood meaning."[7] KRS 411.184(2), by its own terms, demonstrates that the Kentucky General Assembly has reached the same policy determination reached by the majority of jurisdictions that have considered this issue—a plaintiff may not recover punitive damages from a decedent's estate for the decedent's oppressive, fraudulent, or malicious conduct.[8] Therefore, Appellants' argument that plaintiffs *should* be permitted to recover punitive damages in cases like the one at bar is an argument of policy that is better directed to the General Assembly. Although KRS 411.184(1)(f) evidences the General Assembly's intent that punitive damages will serve a policy of general deterrence beyond the individual tortfeasors who are required to pay such awards, the dissent's construction confuses the goals expressed in KRS 411.184(1)(f) with the means outlined in KRS 411.184(2). The dissent's suggestion that KRS 411.184(1)(f) expresses a "clear public policy of deterring and punishing others," simply misconstrues that provision, which does not communicate any intention that Kentucky's courts should punish persons and entities indiscriminately regardless of whether they have committed any wrong.

In order to recover punitive damages from the Estate, Appellants had to prove that "the defendant from whom such damages are sought"—i.e., *the Estate itself*— "acted toward the plaintiff with oppression, fraud or malice." And, in this case, it is undisputed that Appellants could not produce any evidence that the Estate acted in such a manner. In fact, when James Cooper elected to get behind the wheel of his vehicle after having too much to drink—

i.e., at the time of the conduct upon which Appellants base their claim of punitive damages—the Estate did not even exist; it did not come into being until James Cooper died—over four (4) years after the conduct for which Appellants seek punitive damages. "Under that state of the facts, the trial judge correctly declined to instruct the jury on punitive damages."[9]

## IV. CONCLUSION

For the above reasons, we affirm the decision of the Court of Appeals.

LAMBERT, C.J.; COOPER, GRAVES and JOHNSTONE, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which STUMBO, J., joins.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because a proper interpretation of KRS 411.184 does not prohibit the award of punitive damages against "others" such as the decedent driver's estate.

Billy Joe Stewart and Tammy Bowling Badgett were injured in an automobile accident on October 16, 1992 involving James E. Cooper. Stewart was driving on Winchester Avenue in Ashland, Kentucky when Cooper failed to yield the right of way and pulled in front of him resulting in a collision of the two vehicles. Badgett was a passenger in the automobile driven by Stewart. Cooper was arrested at the scene and charged with driving under the influence, first offense. Ultimately, he pleaded guilty to the offense.

**7.** *Regional Jail Authority v. Tackett*, Ky., 770 S.W.2d 225, 229 (1989).

**8.** Jay M. Zitter, Annotation, *Claim for Punitive Damages in Tort Action as Surviving Death of Tortfeasor or Person Wronged*, 30 A.L.R.4th 707 (2000).

**9.** *Berrier v. Bizer*, Ky., 57 S.W.3d 271, 284 (2001).

In 1994, Stewart and Badgett filed a civil suit against Cooper to recover both compensatory and punitive damages for the injuries they received in the collision. Cooper died prior to trial and his estate was substituted as a defendant in 1997. A trial date was set for October 6, 1997, but the estate filed a motion on October 3, 1997, claiming that the plaintiffs could not recover punitive damages because Cooper was deceased. The trial judge agreed and held that the plaintiffs could not recover punitive damages from the estate based on Cooper's alleged negligence. The trial jury gave a verdict of $27,885.75 to Stewart and $15,337.58 to Badgett by way of compensatory damages. The jury apportioned liability 80 percent to Cooper and 20 percent to the plaintiffs. The Court of Appeals affirmed and this Court accepted discretionary review.

As the majority opinion correctly notes, this is a case that involves statutory interpretation. The sections of the statute in question must be read together. KRS 411.184(2) states that:

> A plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice.

Subsection (2) directly follows KRS 411.184(1)(f), which provides that:

> "Punitive damages" includes exemplary damages and means damages, other than compensatory and nominal damages, awarded against a person to punish and to discourage him *and others* from similar conduct in the future. (emphasis added)

It is beyond question that the General Assembly determined that the reason for awarding any punitive damages is to punish and deter the wrongdoer and others from similar conduct in the future. It is the responsibility of this Court to harmonize the language of the legislature so as to produce a result that is not absurd. KRS 411.184(1)(f) specifically used the statutory language to punish and discourage "him and others." The interpretation placed upon this language by the majority cannot be reconciled with the clear public policy of deterring and punishing others.

When read as a whole, the statute is ambiguous to the degree that the words "from whom such damages are sought" could preclude recovery from the estate of a wrongdoer, but then we are left with the words of the previous section about punishing and discouraging others. The words "from whom such damages are sought" in the statute simply means that a plaintiff is entitled to recover punitive damages from one defendant but cannot recover from a codefendant in the absence of egregious conduct.

To highlight the ambiguity and difference of opinion on this question, we need only refer to the writers of legal encyclopedias, particularly, Jay M. Zitter, Annotation, *Claim for Punitive Damages in Tort Actions as Surviving Death of a Tortfeasor or Person Wronged,* 30 A.L.R.4th 707 (1984). As noted by the Court of Appeals, approximately 33 other states have addressed the issue and the majority have determined that punitive damages may not be recovered from an estate. On the other hand, a clear minority of approximately four states do allow punitive damages against the estate. *See Hofer v. Lavender,* 679 S.W.2d 470 (Tex. 1984), recognizing other Texas cases which hold that punitive damages not only punish and deter wrongdoers, but they also provide a vehicle for victims to recover reimbursement for inconvenience, attorneys fees and losses too remote to be considered as compensatory. *See also Penberthy v. Price,* 281 Ill.App.3d 16, 216 Ill.Dec.

902, 666 N.E.2d 352 (1996); *Tillett v. Lippert,* 275 Mont. 1, 909 P.2d 1158 (1996); *Perry v. Melton,* 171 W.Va. 397, 299 S.E.2d 8 (1982).

In Kentucky, the concept of permitting punitive damages in addition to compensatory damages is one of long standing. *Horton v. The Union Light, Heat & Power Co.,* Ky., 690 S.W.2d 382 (1985). Punitive damages are intended to be a penalty for the violation of the rights of another. *Bisset v. Goss,* Ky., 481 S.W.2d 71 (1972). The focus is more on the egregious nature of the offense in societal terms rather than the impact on the individual plaintiff suffering the injury. *See* 25 C.J.S. *Damages* § 117(1) (1989).

The doctrine of punitive damages serves the useful purpose of expressing society's disapproval of intolerable conduct and deterring such conduct where no other remedy would suffice. *See Horton, supra* at 390, *quoting* Mallor and Roberts, *Punitive Damages Toward a Principled Approach,* 31 Hastings L.J. 639 (1980). Punitive damages are awarded in addition to compensatory damage to punish a defendant for his reckless indifference to the rights of others. *Cf. The Restatement (Second) of Torts* § 908(2) (1979).

As observed by Judge Dyche in his dissenting opinion in the Court of Appeals, an injured person can never be made totally whole because attorney fees are not a recoverable cost. The allowance of punitive damages in a proper and legitimate case could be a step toward producing a remedy for that problem.

Caution should always be exercised in regard to the award of punitive damages because a blatantly excessive award can be counterproductive and embarrass the entire judicial and legal system.

The circuit court was in error in refusing to instruct the jury on the issue of punitive damages and to allow the jury to reach a verdict that would fully compensate the plaintiffs for their losses.

STUMBO, J., joins this dissenting opinion.