HECHT, Justice
(dissenting).
The majority opinion follows the rule adopted by this court in Sheik v. Hobson. In that case, decided in 1884, we summarily concluded “the punitory powers of the law ceased when [the tortfeasor] died,” and we expressed a disinclination to punish the wrongdoer’s heirs for their benefactor’s malicious conduct. Sheik v. Hobson, 64 Iowa 146, 148, 19 N.W. 875, 875-76 (1884). Although this court has continued to follow the holding announced in Sheik since it was decided, I believe the rationale supporting the rule is gravely flawed, and I therefore would reverse and remand.
While acknowledging the importance of the doctrine of stare decisis to the rule of law, this court has not hesitated to renounce flawed common law rules. Kersten Co. v. Dep’t of Soc. Servs., 207 N.W.2d 117, 121 (Iowa 1973). Our willingness to revisit such rules finds its source in the sensible notion that fealty to stability in the law “should not be invoked to maintain a clearly erroneous result simply because that’s the way it has been in the past.” Id. This principle recognizes the reality that courts sometimes make mistakes and concedes “we should be as willing to correct our own mistakes as we are those of others.” Id. In my view, this is one of those times.
In rejecting the idea that punitive damages should not be recoverable against a tortfeasor’s estate, the Arizona Supreme Court has noted:
There is no logical reason why courts should allow a punitive award against a defendant who survives a judgment, but deny it where death occurs earlier. Suppose, for example, two individuals commit equally culpable and outrageous acts. One is comatose and, for all practical purposes, has no reasonable chance of recovery. The other is dead. Is there a way to explain why the unconscious tortfeasor would have his assets exposed to punitive liability, while the deceased’s estate would be immunized from it?
*579 Haralson v. Fisher Surveying, Inc., 201 Ariz. 1, 31 P.3d 114, 118 (2001). Although courts following the majority rule have offered explanations for the rule immunizing tortfeasors’ estates from punitive damage judgments, I find none of them persuasive.
Perhaps the most common explanation— one conclusorily noted by this court shortly after the Civil War — suggests the purpose of punishment cannot be achieved against a deceased tortfeasor. Sheik, 64 Iowa at 147-48, 19 N.W. at 875-76. While this proposition has some logical appeal, I believe the law should, for purposes of punishment, view punitive damages as an appropriate means to accomplish a form of retribution against the departed. A tort-feasor’s testamentary or intestate transfer of assets can have an impact on the lives of survivors long after the tortfeasor’s death. Just as his predeath misconduct can have injurious consequences long after his death, a tortfeasor reaches beyond the grave to effectuate property transfers through his estate. Although the deceased tortfeasor is not physically present to personally experience the retributive effects of any punitive damage judgment against his estate, I believe it is reasonable to view the disruption of his preferred plan of postdeath asset distribution as a form of punishment of the deceased tortfeasor. Accordingly, I believe we were simply wrong when we concluded in Sheik that the power of the law to punish a deceased tortfeasor expires with his death.
A second explanation offered by courts following the majority rule posits that innocent beneficiaries should not suffer consequences for the willful and wanton misconduct of benefactor-tortfeasors. In my view, this notion misses the mark. A punitive damage award against the tortfeasor’s estate effects no punishment on the beneficiaries. The beneficiaries of the tortfea-sor’s estate are affected by all manner of their benefactor’s predeath choices and conduct. In some instances a benefactor’s predeath choices and conduct enhance, and in other instances diminish, the economic outcomes for his beneficiaries. For better or worse, estate beneficiaries experience the consequences of their benefactor’s pre-death decisions and conduct for which they are not legally or morally responsible. When a benefactor’s predeath choices or conduct consistent with the law adversely affect the amount of assets available for distribution from his estate, beneficiaries are not generally shielded or held harmless. They take whatever assets are available to them from the estate consistent with the prevailing law. As the Intermediate Court of Appeals of Hawaii has observed:
The fact that the size of the tortfeasor’s estate would be reduced is not a valid reason for not entering the judgment for punitive damages against the tortfea-sor’s estate. The beneficiaries of the estate of the tortfeasor have no right or entitlement to more than the tortfeasor would have had if he or she had lived, or to more than the net of the tortfeasor’s estate after payment of all legal obligations, including judgments against the estate for punitive damages.
Kaopuiki v. Kealoha, 104 Hawaii 241, 87 P.3d 910, 928 (Haw.Ct.App.2003).
Where the legislature has not directed otherwise, the common law of Iowa should allow punitive damage judgments against estates. The contrary rule announced in Sheik comes at far too great a cost to the legitimate purpose of punishment served by punitive damage judgments.
But aside from the question of whether the purpose of punishment can, and as I believe, it should, be achieved through a punitive damage remedy against the estate of a tortfeasor who willfully and wantonly *580 injures another, I would overrule Sheik in furtherance of the purpose of deterrence alone. See Penberthy v. Price, 281 Ill. App.3d 16, 216 Ill.Dec. 902, 666 N.E.2d 352, 356-57 (1996) (finding a sufficient deterrent purpose for punitive damages against a tortfeasor’s estate even if the purpose of tortfeasor punishment is not achieved). As the majority opinion correctly notes, the goal of deterrence may be viewed specifically and generally. In the context of specific deterrence, the inquiry is whether a specific tortfeasor would be motivated by the prospect of his liability for punitive damages to refrain from willful and wanton misconduct. In the context of general deterrence, the question is whether other potential actors will tend to avoid willful and wanton misconduct as a consequence of a punitive damage judgment against the specific tortfeasor’s estate. I believe a common law rule authorizing a judgment for punitive damages against the estate of a tortfeasor who willfully or wantonly injured another powerfully serves as a deterrent in both contexts.
The tortfeasor who understands the distribution of the assets in his estate could be disrupted by a judgment for punitive damages — should he die as a consequence of his willful or wanton misconduct against another or from other causes prior to the entry of a civil judgment — will likely be deterred by the prospect. The purpose of deterrence is clearly advanced when a living, potential tortfeasor knows his estate plan, usually benefitting a spouse, children, family, or friends, will be disrupted by a punitive damage judgment if he engages in willful and wanton tortious conduct, whether he survives the imposition of judgment or not. The rule announced in Sheik and reaffirmed in this case by the majority militates against the purpose of specific deterrence for certain tortfeasors, such as one who is terminally ill or elderly or one who is contemplating a willful or wanton act calculated to cause his own death and harm another, by assuring them a crude advantage over the tortfeasor who survives his willful and wanton tort and civil judgment.
Deterrence in the general sense would also be maximized by a rule allowing judgments for punitive damages against tortfeasors’ estates. Others perceiving judgments for punitive damages against tortfeasors’ estates will be deterred from willful or wanton misconduct, knowing that their estate plans and loved ones will be similarly affected by their willful and wanton misconduct. The extraordinary importance of general deterrence alone justifies, in my view, the reversal of Sheik and the adoption of a new rule. Accordingly, I respectfully dissent.