The **ESTATE OF William B. FARRELL, By and Through Its Administratrix, Jackie BENNETT, Defendant Below, Appellant/Cross Appellee,**

v.

**Austin S. GORDON and Kimberly D. Gordon, Plaintiffs Below, Appellees/Cross Appellants.**

**No. 408, 2000.**

Supreme Court of Delaware.

Submitted: Feb. 21, 2001.
Decided: April 11, 2001.

---

**39.** *Kyles*, 514 U.S. at 435, 115 S.Ct. 1555.

**40.** *See Kyles*, 514 U.S. at 434, 115 S.Ct. 1555 (citing *Bagely*, 473 U.S. at 678, 105 S.Ct. 3375).

**41.** *Id.*

Richard W. Pell, (argued) and Susan A. List, Tybout, Redfearn & Pell, Wilmington, Delaware, for Appellant/Cross Appellee.

William D. Fletcher, Jr., Schmittinger & Rodriguez, P.A., Dover, Delaware, for Appellees/Cross Appellants.

Before: WALSH, BERGER, and STEELE, Justices.

PER CURIAM:

In this appeal from the Superior Court, we address two issues of first impression. The first question is whether the collateral source rule permits a plaintiff to recover motor vehicle property damages from a tortfeasor despite payment for such damage by the plaintiff's collision carrier. The second question, posed by cross-appeal, is whether punitive damages may be recovered against the estate of a deceased tortfeasor. We answer both questions in the affirmative.

I

The factual basis underlying this matter is undisputed. Plaintiffs below-appellees/cross-appellants, Austin S. Gordon and Kimberly D. Gordon, (the "Gordons") filed suit in the Superior Court to recover damages arising out of a motor vehicle collision which occurred on March 22, 1997. The driver of the other vehicle, William B. Farrell, pleaded guilty to vehicular assault and driving under the influence. Farrell died seven months after the accident and suit was filed against the administratrix of his estate, Jackie Bennett (the "Estate"). The Gordons sought both compensatory and punitive damages based on Farrell's reckless conduct and intoxication. Prior to trial, the Estate conceded negligence.

The damage to the Gordons' motor vehicle was total and initially they sought recovery from their own collision carrier who honored their claim in the amount of $19,000. The Gordons' collision carrier pursued subrogation, through intercompany arbitration, against Farrell's liability carrier who then paid the Gordons' collision carrier $13,000. Despite receiving payment in full for their motor vehicle loss, the Gordons sought to recover, in their suit against the Estate, the $6,000 difference between their actual loss and the amount paid by Farrell's liability carrier.

Prior to trial, the Estate filed a motion *in limine* to preclude the Gordons from presenting evidence of their property damage in view of the payment by their collision carrier of the full value of the motor vehicle. The Superior Court ruled, however, that the collateral source rule permitted the Gordons to present evidence and recover that portion of their property damage ($6,000) not previously paid by or on behalf of the tortfeasor. The trial court further ruled that Delaware's no fault stat-

ute, 21 *Del.C.* § 2118(a)(2) and (3), bars the recovery of only medical expenses and lost wages in an action against the tortfeasor, and, by implication at least, does not prevent recovery of property damage. We agree.

While the result here is somewhat anomalous to the extent that the Gordons will recover more than the value of their motor vehicle, the collateral source rule supports such recovery. The collateral source rule is firmly embedded in Delaware jurisprudence and permits an injured party to look to any contractual source for recompense notwithstanding the availability of recovery against a tortfeasor who "has no interest in, and no right to benefit from, monies received by the injured person from sources unconnected with the [tortfeasor]." *Medical Ctr. of Delaware v. Mullins,* Del.Supr., 637 A.2d 6, 10 (1994) (quoting *Yarrington v. Thornburg,* Del. Supr., 205 A.2d 1, 2 (1964)).

Recently, this Court limited the collateral source rule where an injured party received loss of earnings compensation from a collateral source for which the plaintiff had paid no consideration. *See State Farm Mut. Auto. Ins. Co. v. Nalbone,* Del.Supr., 569 A.2d 71 (1989). Notwithstanding this limitation, we explicitly held that whenever the injured party has paid even the smallest consideration to the collateral source, the tortfeasor, or its insurer, must still fully compensate the plaintiff. *See id.* at 75. Double recovery by a plaintiff is acceptable so long as the source of such payment is unconnected to the tortfeasor. *See Yarrington v. Thornburg,* Del.Supr., 205 A.2d 1, 2 (1964).

Nor is the force of the collateral source rule, as applied here, mitigated by Delaware's no-fault statute. While § 2118(h) also precludes "pleading or introducing into evidence in an action for damages against a tortfeasor" certain damages for which compensation is available under PIP coverage, those restrictions are specifically limited to medical expenses and lost earnings, sustained within certain time periods. *See* 21 *Del.C.* § 2118(a)(2)a. While it may be argued that recovery of property damage in a tort action is contrary to the "spirit" of speedy first party insurance recovery underlying no-fault insurance, we are not free to impose limits on recovery, or dilute the force of the collateral source rule in the absence of specific legislative direction.[1]

## II

The Gordons' cross appeal is prompted by the Superior Court's rejection of their claim for punitive damages against Farrell's estate. The trial court, relying upon recent Superior Court precedent and the Restatement of Torts, ruled that such damages are not recoverable against the estate of a tortfeasor.[2] The Gordons contend that the Superior Court's ruling failed to consider the language of the Delaware Survival Act, 10 *Del.C.* § 3701, which is in derogation of the com-

1. While the Gordons' recovery may be deemed a windfall under the unusual facts of this case, they concede that had Farrell's liability carrier reimbursed their own collision carrier in the full amount of their loss through subrogation, the collateral source rule would treat such payment as on behalf of the tortfeasors and bar further recovery.

2. "The purposes of awarding punitive damages, or 'exemplary damages' as they are frequently called, are to punish the person doing the wrongful act and to discourage him and others from similar conduct in the future.... Punitive damages are not awarded against the representatives of the deceased tortfeasor nor, ordinarily, under an action under the death statute." RESTATEMENT (SECOND) OF TORTS § 908 cmt. a (1977).

mon law and provides a legal basis for preserving a claim for punitive damages, notwithstanding the death of the tortfeasor.

The Delaware Survival Statute provides in pertinent part:

> All causes of action, except actions for defamation, malicious prosecution, or upon penal statutes, shall survive to and against the executors or administrators of the person to, or against whom, the cause of action accrued. Accordingly, all actions so surviving, may be instituted or prosecuted by or against the executors or administrators of the person to or against whom the cause of action accrued. This section shall not affect the survivorship among the original parties to a joint cause of action.

10 *Del.C.* § 3701.

■ The obvious purpose of the survival statute is to insure that "all causes of action" are assertable against the estate of any deceased person, whether the person dies before or during the pendency of the litigation. The three exceptions to the surviving claims are specifically noted: defamation, malicious prosecution or actions based upon penal statutes.

■ An award of punitive damages as a supplement to a compensatory damage award in egregious cases has long been recognized in Delaware. *See Jardel Co., Inc. v. Hughes,* Del.Supr., 523 A.2d 518, 528–29 (1987) (tracing the evolution of the doctrine under Delaware decisional law). Punitive damages serve a dual purpose— "to punish wrongdoers and deter others from similar conduct." *Id. at 529.* Courts that have considered the imposition of punitive damages against the estate of a deceased tortfeasor, however, have disagreed over the result.

A majority of jurisdictions that have considered the question have ruled that punitive damages are not recoverable from the estate of the tortfeasor, although the limitation is the result of statutory restrictions in many of these states. See cases collected in *G.J.D. v. Johnson,* 447 Pa.Super. 340, 669 A.2d 378 (1995), *aff'd G.J.D. By G.J.D. v. Johnson,* 552 Pa. 169, 713 A.2d 1127 (1998). *See also* RESTATEMENT (SECOND) OF TORTS § 926 (1977) ("Under statutes providing for the survival ... of tort actions, the damages ... for which the tortfeasor is responsible are not affected by the death of either party before or during trial except that ... the death of the tortfeasor terminates liability for punitive damages."). The debate in those states that have no statutory restriction centers over whether the deterrence purpose is served by imposing a monetary penalty against a tortfeasor who is deceased. *Compare Perry v. Melton,* 171 W.Va. 397, 299 S.E.2d 8, 12 (1982) (considering the effect of punitive damages on deterring others from engaging in similar acts in allowing punitive damage award against estate of deceased tortfeasor) *and Hofer v. Lavender,* Tex.Supr., 679 S.W.2d 470 (1984) (same), *with Jaramillo v. Providence Washington Ins. Co.,* 117 N.M. 337, 871 P.2d 1343, 1352 (1994) (refusing to allow punitive damages against estate of deceased tortfeasor because death of tortfeasor defeats the central purpose of awarding such damages, which is to punish the tortfeasor and deter him or her from repeating the wrongful act), *and Lohr v. Byrd,* Fla.Supr., 522 So.2d 845 (1988) (same).

Although there is some merit in questioning the deterrence factor, we believe the better approach is to recognize the continued viability of punitive damage claims against the estate. Thus we align ourselves with the Pennsylvania Superior Court, which expressed the following rationale for its holding.

> While one of the two purposes served by an award of punitive damages is defeated by the death of the tortfeasor, the

deterrence effect of the award is unaltered, and perhaps even enhanced, by the assessment of punitive damages against the estate of the tortfeasor.

*G.J.D. v. Johnson,* 669 A.2d at 383.

Moreover, unlike the Pennsylvania statute[3] that contains no exclusions, the Delaware Survival Statute, as previously noted, contains specific limitations on recovery. Had the General Assembly intended to exclude claims for punitive damages from recovery against the estate of a deceased tortfeasor, it could easily have done so. The omission is significant and we are not inclined to engraft a further restriction by embracing the Restatement provision.

In sum, we conclude that, in the absence of a specific statutory restriction, there is no basis to bar recovery for punitive damages against the estate of a deceased tortfeasor.

The judgment of the Superior Court is AFFIRMED as to the appeal and REVERSED as to the cross-appeal.

---

3. "All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." 42 Pa. C.S. § 8302.