IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 113,097
113,282

THE ALAIN ELLIS LIVING TRUST;
HARVEY D. ELLIS, JR. and NADIA M. ELLIS,
Individually and as Natural Parents,
Guardians, and Next Friends of Minor, S.E.;
and ROGER K. ELLIS,
*Appellants,*

v.

THE HARVEY D. ELLIS LIVING TRUST;
THE ESTATE OF HARVEY D. ELLIS;
EMPRISE BANK,
a Kansas Banking Corporation;
and CATHLEEN A. GULLEDGE,
*Appellees,*

KANSAS UNIVERSITY ENDOWMENT ASSN., et al.,
*Intervenors/Appellees.*

SYLLABUS BY THE COURT

1.

A trust and its beneficiaries who have brought a cause of action for a trustee's breach of trust and breach of fiduciary duty may seek punitive damages under K.S.A. 58a-1002(c) from the estate of the trustee under the procedures and requirements of K.S.A. 60-3702 and 60-3703.

2.

Under K.S.A. 58a-1002(a)(3), if a beneficiary of a trust brings a cause of action alleging a deceased trustee embezzled or knowingly converted to the trustee's own use any of the personal property of the trust, the trustee's estate shall be liable for double the

value of the embezzled or converted property if those damages are greater than the damages calculated under K.S.A. 58a-1002(a)(1) or (a)(2).

Review of the judgment of the Court of Appeals in 53 Kan. App. 2d 131, 385 P.3d 533 (2016). Appeal from Sedgwick District Court; MARK A. VINING, judge. Opinion filed September 21, 2018. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded.

*Sarah E. Warner*, of Thompson Warner, P.A., of Lawrence, argued the cause, and, *Stephen R. McAllister*, of the same firm, was with her on the briefs for appellants.

*Lee Thompson*, of Thompson Law Firm, LLC, of Wichita, argued the cause and was on the briefs for appellees The Harvey D. Ellis Living Trust and The Estate of Harvey D. Ellis.

*Curtis L. Tideman* and *Emily R. Davis*, of Lathrop & Gage LLP, of Overland Park, were on the briefs for intervenors/appellees Kansas University Endowment Association, *et al*.

The opinion of the court was delivered by

LUCKERT, J.: In this case, a trust and its beneficiaries assert separate damage claims against a deceased trustee for (1) punitive and (2) double damages under K.S.A. 58a-1002 of the Kansas Uniform Trust Code (KUTC) and under the common law relating to a breach of trust and a breach of fiduciary duty. This appeal asks us to determine as a matter of first impression whether those damages may be recovered after the death of a trustee. The short answer is, "Yes."

K.S.A. 58a-1002, the punitive damages provisions in K.S.A. 60-3702 and 60-3703, and the Kansas survival statute, K.S.A. 60-1801, do not directly answer this question, leaving an ambiguity. But our statutory construction leads us to the conclusion that these statutes, when read together and in conjunction with Kansas common law,

2

reveal a legislative intent to preserve the right to damages—even those that are penal in nature—after a tortfeasor's death. Thus, we conclude the death of a trustee does not prevent a trial court from allowing a trier of fact to determine whether the estate of a deceased trustee who committed a breach of fiduciary duty and knowingly committed a breach of trust should be liable for (1) punitive damages and (2) statutory damages equal to twice the amount of the property converted when those provide the greater recovery under K.S.A. 58a-1002(a).

FACTS AND PROCEDURAL HISTORY

Alain Ellis and her husband Dr. Harvey Ellis, Sr., both executed living trusts. After Alain's death, Harvey served as the trustee of her trust. Under the trust agreement, Harvey was entitled to all income from the trust during his life. Upon his death, the trust was to be divided equally between the Ellises' two sons, and each was to receive income from the principal. When either son died, the principal was to go to that son's children or, if he had no children, it was to be combined with the other son's trust. Neither Alain nor Harvey told their sons or their sole grandchild of the trust.

While acting as trustee, Harvey improperly converted a substantial amount from Alain's trust and placed the converted assets into his own trust. His trust beneficiaries were several charitable and educational organizations. After his death, the improper transfers were discovered and investigated, resulting in $1,431,143.45 being returned to Alain's trust.

Alain's trust and her trust's beneficiaries (cumulatively, Alain's Trust) sought additional damages by suing several parties, including The Harvey D. Ellis Living Trust, Harvey's estate, Cathleen Gulledge (an attorney who had advised Harvey and the successor trustee of Alain's trust), and Emprise Bank (a successor trustee for both Alain's

3

and Harvey's trust). Some beneficiaries of The Harvey D. Ellis Living Trust—specifically, The Kansas University Endowment Association, Dallas Theological Seminary, and a Christian ministry group known as The Navigators—intervened to protect their interests as beneficiaries of Harvey's trust. (Harvey's trust, Harvey's estate, and the intervening beneficiaries of Harvey's trust will be cumulatively called Harvey's Estate.)

Before trial, the trial court made two rulings that are now at issue. One relates to a motion to amend the petition to add a claim for punitive damages and the second to a ruling on a motion for partial summary judgment.

In the first ruling, the trial court partially granted a motion to amend the petition by allowing Alain's Trust to make a claim for punitive damages against Gulledge and Emprise Bank. But it denied the request to seek punitive damages from Harvey's Estate. The trial court found that the facts established Harvey had engaged in willful and wanton misconduct, but it concluded Alain's Trust could not bring a punitive damages claim because he had passed away.

In the second ruling, the trial court granted partial summary judgment after concluding Alain's Trust was not entitled to recover double damages under K.S.A. 58a-1002 against the assets of Harvey's Estate. The trial court held the facts did not fit K.S.A. 58a-1002(a)(3)—the provision of the KUTC that allows double damages. Alternatively, the trial court reasoned the provision, even if factually applicable, was not legally applicable because it was penal and claims for penal damages, such as punitive damages, do not survive the death of a malfeasant trustee.

At trial, the trial court made some rulings as a matter of law. These resulted in the court instructing the jury that the court had ruled that Harvey's trust and estate were liable

4

for any damages that resulted when Harvey "converted and embezzled principal in the amount of $1,541,827.59 from the Alain Ellis Living Trust and placed it in the Harvey D. Ellis Living Trust."

The jury entered a verdict partially in favor of Alain's Trust. It found Harvey committed a breach of trust and a breach of fiduciary duty and that Gulledge had committed a breach of fiduciary duty. But the jury found that Emprise Bank was free of wrongdoing. The jury also determined the damages to be $1,557,973.48 and also found all "of those damages are a direct result of a breach by: Harvey D. Ellis, Sr." Despite finding wrongdoing by Gulledge, the jury declined to find her liable for any damages. The jury further found the damages should be offset with a credit in the amount of $1,431,143.45 because of the assets returned to Alain's Trust.

On appeal to the Court of Appeals, Alain's Trust challenged the trial court's two rulings that prevented the jury from considering whether Alain's Trust should receive double or punitive damages against Harvey's Estate. One of the beneficiaries of Alain's trust also asserted the trial court erred in refusing to require Harvey's Estate to pay his attorney fees. The Court of Appeals affirmed the trial court's decision. *Alain Ellis Living Trust v. Harvey D. Ellis Living Trust*, 53 Kan. App. 2d 131, 385 P.3d 533 (2016).

Alain's Trust petitioned for review of only the two issues about double and punitive damages. We granted review. The Court of Appeals' decision about payment of attorney fees is not before us. Nor is its conclusion that Harvey converted the property to his own use. See Supreme Court Rule 8.03(h)(1) (2018 Kan. S. Ct. R. 56) ("[I]ssues before the Supreme Court include all issues properly before the Court of Appeals which the petition for review or cross-petition allege were decided erroneously by the Court of Appeals.").

5

We must decide: First, did the trial court err in ruling that Alain's trust could not seek punitive damages from a deceased settlor's revocable trust or estate even though the trustee has committed a breach of trust? Second, did the trial court err in ruling that the double damage penalty of K.S.A. 58a-1002(a)(3) does not survive the death of a malfeasant trustee? Both issues share the common question of whether Kansas law allows an injured party to recover all the various types of damages provided for in the KUTC or allowed at common law even if the trustee has died before judgment.

As the Court of Appeals noted: "There is no doubt in this case that [Harvey] acted toward [Alain's Trust] with willful conduct and fraud that would have supported a claim against him for punitive damages had he still been alive at the time of the litigation." *Alain Ellis Living Trust*, 53 Kan. App. 2d at 137. Similarly, in addressing the double damages provision, the Court of Appeals held that Harvey's "actions would have subjected him to the double damages of K.S.A. 58a-1002(a)(3) had he been alive during this litigation." 53 Kan. App. 2d at 143.

Nevertheless, the Court of Appeals determined Alain's Trust could not ask the jury to award the damages because: (1) K.S.A. 58a-1002 and other Kansas statutes do not specifically provide for recovery against an estate and there must be express statutory language that allows an injured party to seek to have punitive damages paid by anyone other than the actual wrongdoer, including the wrongdoer's estate; (2) as found by a majority of other courts, awarding punitive damages against an estate would not further the purposes of punitive damages, and (3) the double damage award, like the punitive damage provision, is penal and trust beneficiaries cannot seek double damages from the trustee's estate for the same reasons a court cannot award punitive damages against a deceased trustee's estate. 53 Kan. App. 2d at 141-45.

6

We first address whether a trust beneficiary can seek punitive damages—whether sought under K.S.A. 58a-1002(c) or under common law—from the estate of a deceased tortfeasor.

1. *Does Kansas law allow a trust and its beneficiaries to seek punitive damages from a deceased trustee?*

During pretrial proceedings, the trial court denied a motion filed by Alain's Trust seeking to amend its petition to add a claim for punitive damages against Harvey's Estate. Both Alain's Trust and Harvey's Estate recognize this court has not decided whether a wrongdoer's death means an injured party cannot make a claim for punitive damages against the estate of a deceased wrongdoer. And the Court of Appeals has considered this question only in the decision we now review and in the more recent decision of *Harder v. Foster*, 54 Kan. App. 2d 444, 475, 401 P.3d 1032 (2017). *Harder* applied the reasoning of the *Alain Ellis Living Trust* Court of Appeals' panel to the general question of whether punitive damages can be applied against a deceased tortfeasor in a common-law cause of action—in that case, fraudulent conveyance.

Even though this issue is one of first impression for our court, we review it as we would any other trial court ruling on a motion to amend—for an abuse of discretion. *Adamson v. Bicknell*, 295 Kan. 879, 887, 287 P.3d 274 (2012). A trial court can abuse its discretion in several ways, including when it bases a decision on an error of law. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011). And that is what Alain's Trust alleges happened here—the trial court made an erroneous ruling about the availability of punitive damages under Kansas law. The issue before us thus involves an "abstract question of law," which we review de novo. See *In re Care and Treatment of Girard*, 296 Kan. 372, 376, 294 P.3d 236 (2013).

7

Harvey's Estate presented this issue of law to the trial court when it opposed the motion to amend filed by Alain's Trust. It argued that neither Kansas common law nor statutes allowed recovery of punitive damages against the estate of a deceased trustee. In response, Alain's Trust contends that legislative silence means the damages are available because the Legislature provided for the damages and then created no exception if a tortfeasor died. Alain's Trust points out that courts do not generally add words to a statute. See *State v. Gray*, 306 Kan. 1287, 1294, 403 P.3d 1220 (2017). And she suggests we would have to do so to create an exception not currently in the statutes.

The proposed punitive damages claim offered by Alain's Trust does not rest solely on K.S.A. 58a-1002(c), however. Alain's Trust also alleged a common-law claim for breach of a fiduciary duty. See *Newton v. Hornblower, Inc*., 224 Kan. 506, Syl. ¶ 13, 582 P.2d 1136 (1978) ("Punitive damages, as well as actual damages, are proper where a breach of fiduciary duty is involved."). And both parties focus on the caselaw of other jurisdictions to argue about whether punitive damages are generally available against a deceased tortfeasor. The outcome of many of these cases is based on statutory interpretation, at least in part. For example, at least 14 of the cases adopting the position that an injured party cannot recover punitive damages from the estate of a tortfeasor—the majority rule—reached that conclusion because their respective state legislatures had passed a statute stating that position. And two other courts took the opposite position by applying a statute that adopted the minority position. Still other courts had no clear statutory language to rely upon, but these courts applied rules of statutory construction and discerned their respective state legislature's intent about whether a punitive damage claim survives the death of a trustee. See, e.g., *Estate of Farrell ex rel. Bennett v. Gordon*, 770 A.2d 517, 522 (Del. 2001); see also Note, *Invading the Realm of the Dead: Exploring the (Im)Propriety of Punitive Damage Awards Against Estates*, 47 U. Mich. J.L. Reform 827, 831-35 (2014).

The Kansas statutes most relevant to our inquiry include those generally providing for punitive damages, K.S.A. 60-3702 and 60-3703; K.S.A. 58a-1002, the applicable damage provision from the KUTC; and the Kansas survival statute, K.S.A. 60-1801. We consider these statutes de novo and apply the fundamental principle of statutory interpretation: The intent of the Legislature governs. *State v. Spencer Gifts*, 304 Kan. 755, 761-62, 374 P.3d 680 (2016). "And the best and only safe rule for ascertaining the intention of the makers of any written law, is to abide by the language they have used." *Wright v. Noell*, 16 Kan. 601, 607, 1876 WL 1081 (1876); see *Spencer Gifts*, 304 Kan. at 761.

Kansas statutes, like the statutes in several states, do not directly address the effect of a death on punitive damages. In other situations in which statutes displace the common law, we have recognized that ambiguity about the scope of the displacement may arise from legislative silence. See *State v. Quested*, 302 Kan. 262, 268, 352 P.3d 553 (2015). The same type of ambiguity exists here. "When faced with an ambiguity, courts must attempt to ascertain legislative intent and in doing so may look to canons of construction, legislative history, the circumstances attending the statute's passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested." 302 Kan. at 268.

We consider those principles as applied to punitive damages in Kansas caselaw and statutes.

1.1. *Kansas Caselaw and Statutes*

As early as 1864, this court recognized that punitive damages had "been long established, recognized and acted upon by enlightened Courts." *Malone v. Murphy*,

9

2 Kan. 250, 262, 1864 WL 425 (1864). Following this decision and during much of our state's history, Kansas law about punitive damages was based on common law. Eventually, however, the Kansas Legislature passed a punitive damages statute. And in 1988, the Kansas Legislature adopted the statutes now codified, with some later amendments, at K.S.A. 60-3702 and 60-3703. See L. 1997, ch. 173, § 33 (amendment); L. 1992, ch. 307, §§ 3, 4 (amendment); L. 1988, ch. 209, §§ 3, 4 (adopting K.S.A. 60-3702 and 60-3703). After the adoption of these statutes, this court recognized that the Kansas Legislature has "the power to abolish punitive damages altogether" and "certainly has the right to modify the method by which those damages are determined." *Smith v. Printup*, 254 Kan. 315, 331, 866 P.2d 985 (1993). Thus, as the Court of Appeals concluded, "the recovery of punitive damages is governed by statute." *The Alain Ellis Trust*, 53 Kan. App. 2d at 140.

K.S.A. 60-3702 begins by stating: "In any civil action in which exemplary or punitive damages are recoverable, the trier of fact shall determine, concurrent with all other issues presented, whether such damages shall be allowed." K.S.A. 60-3702(a). K.S.A. 60-3703 specifies a procedure for seeking those damages. The party seeking punitive damages must file a motion to amend its pleading to state a claim for punitive damages and must support the motion with affidavits. The party must establish a probability of success on the punitive damage claim before the amendment will be allowed. At trial, a plaintiff seeking punitive damages "shall have the burden of proving, by clear and convincing evidence, . . . that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." K.S.A. 60-3702(c).

Applying that provision, this court has cautioned trial courts "not to usurp the role of the jury" but to look at the evidence "in a light most favorable to the party moving for the amendment, and [consider] if the evidence is of sufficient caliber and quality to allow a rational factfinder to find that the defendant acted towards the plaintiff with willful

10

conduct, wanton conduct, fraud, or malice." *Fusaro v. First Family Mtg. Corp.*, 257 Kan. 794, 802, 897 P.2d 123 (1995). But this standard does not speak to the threshold determination of whether a party who can meet this evidentiary standard always has a right to punitive damages. The only guidance comes from the opening words of the statute: "In any civil action in which exemplary or punitive damages are recoverable."

Punitive damages are generally allowed in breach of trust and breach of fiduciary actions if a plaintiff can meet the burden of proof requirement of K.S.A. 60-3702(c). See *Capitol Fed'l Sav. & Loan Ass'n v. Hohman*, 235 Kan. 815, 816-17, 682 P.2d 1309 (1984) (breach of trust); *Newton,* 224 Kan. 506, Syl. ¶ 13 (breach of fiduciary duty). The KUTC also recognizes and preserves the potential availability of punitive damages when a trust beneficiary brings an action for breach of trust. It first addresses three methods for calculating damages and then discusses punitive damages:

> "(a) A trustee who commits a breach of trust is liable to the beneficiaries affected for the greater of:
> (1) The amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred;
> (2) the profit the trustee made by reason of the breach; or
> (3) if the trustee embezzles or knowingly converts to the trustee's own use any of the personal property of the trust, the trustee shall be liable for double the value of the property so embezzled or converted.
> . . . .
> "(c) The provisions of this section shall not exclude an award of punitive damages." K.S.A. 58a-1002.

Even though K.S.A. 60-3702 and K.S.A. 58a-1002 do not explicitly discuss the effect of a party's death, Alain's Trust argues that one reading these statutes would understand that the trust beneficiaries could bring a cause of action against Harvey's Estate and may seek punitive damages. Harvey's Estate counters with several arguments.

11

First, Harvey's Estate points out that the Kansas survival statute preserves "causes of action" and says nothing about preserving remedies or specific types of damages. His argument arises because a cause of action for tort did not generally survive the death of either a plaintiff or a defendant at common law. See generally *Seamans v. Brown*, 109 Kan. 448, 199 P. 473 (1921). K.S.A. 60-1801, commonly called the Kansas survival statute, displaces this common law rule, however. It states:

> "In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, or for death by wrongful act or omission, shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same." K.S.A. 60-1801.

Even so, Harvey's Estate points out that K.S.A. 60-1801 merely provides that the cause of action against Harvey survived; it does not inform us of what remedies are available under any specific cause of action after the death of either party. See *Printup*, 254 Kan. at 322-23 (holding that no cause of action arises just because of an injury, punitive damages are "incidental" to actual damages, and punitive damages do not by themselves create a cause of action); see generally Black's Law Dictionary 266 (10th ed. 2014) ("cause of action" means the theory or grounds for bringing a lawsuit).

*Printup* is instructive, however. There, this court considered whether punitive damages could be claimed (1) in a wrongful death action and (2) in a survival action under K.S.A. 60-1801. The *Printup* court held those who had brought a wrongful death action could not seek punitive damages. The court explained that the wrongful death cause of action had been created by statute and, because it was a statutory cause of action, the Legislature had to provide for punitive damages in order for them to be recoverable. And the Legislature had not done so. 254 Kan. at 333; see *Folks v. Kansas Power &*

12

*Light Co.*, 243 Kan. 57, 755 P.2d 1319 (1988). But the *Printup* court allowed representatives of the injured party who had died shortly after a vehicle accident to recover punitive damages in the survival action. 254 Kan. at 323.

We understand there are reasons to differentiate between the injured party receiving punitive damages and a deceased wrongdoer's estate paying the damages—the policy reasons that drive court decisions in Kansas and other jurisdictions, as we will discuss in more detail. Still, according to *Printup*, the Legislature intended to ensure the survival of both the cause of action and the remedies incidental to that cause of action. Thus, we do not find the first argument presented by Harvey's Estate—that the survival statute merely addresses a "cause of action"—determinative.

Second, Harvey's Estate argues neither K.S.A. 60-3702 nor K.S.A. 58a-1002 specifically state that an injured party can recover punitive damages even if a tortfeasor has died. It specifically points out that K.S.A. 58a-1002 uses only the term "trustee" and not "a trustee's estate." But an estate generally stands in the shoes of the deceased, and one reason an estate exists is to meet the financial obligations of a decedent, including damages that may result from legal claims against the decedent. See *Nelson v. Nelson*, 288 Kan. 570, 591, 205 P.3d 715 (2009) ("The nonclaim statute recognizes that a decedent no longer has the individual capacity to respond in damages to torts, to pay debts, to carry out contracts, or to administer his or her estate; therefore, the estate must meet the decedent's financial obligations."). And in some cases, a trust may also be liable for claims against a creditor. *Commerce Bank, N.A. v. Bolander*, 44 Kan. App. 2d 1, 13, 239 P.3d 83 (2007) (holding that even after a settlor's death the "clear unambiguous intent of the legislature [expressed] in K.S.A. 58a-505[a][3] [is to] mak[e] the assets of a revocable trust 'subject to the claims of the settlor's creditors.'"). But see *Taliaferro v. Taliaferro*, 252 Kan. 192, 843 P.2d 240 (1992) (in an action by a surviving spouse seeking to invalidate two revocable inter vivos trusts created by her husband, holding that

13

[1] the district court erred in ordering all the corporate stock held by a husband's trust be transferred to the estate, [2] the district court erred in failing to require the surviving spouse to file an election, and [3] if, upon remand, the surviving spouse elects to take against the will, the court should order a transfer to the estate of only that portion of the corporate stock held by the trust which is necessary to give the surviving spouse her one-half share of the decedent's assets under K.S.A. 59-602[2]).

The lack of any reference to the trustee's estate is not an obstacle to Alain's Trust making a claim for punitive damages because statutes other than K.S.A. 58a-1002 make clear that the estate can stand in the shoes of a deceased tortfeasor.

Third, Harvey's Estate asks us to adopt the reasoning of the Court of Appeals' panel about the import of various provisions of K.S.A. 60-3702(d). These provisions, the Court of Appeals concluded, expressed the Legislature's intent to impose punitive damages on only the wrongdoer. *Alain Ellis Living Trust*, 53 Kan. App. 2d at 137, 139. For example, K.S.A. 60-3702(d)(1) limits the circumstances in which courts may assess exemplary or punitive damages against a principal or employer for the acts of an agent or employee to those acts authorized or ratified by the principal or employer. And K.S.A. 60-3702(d)(2) prohibits assessing punitive or exemplary damages against a partnership or corporation for the acts of a partner or a shareholder unless the partnership or corporation authorizes or ratifies the acts. Because of the intent expressed in these statutes, the Court of Appeals refused to recognize that an estate could be liable for punitive damages.

This point finds some support in our caselaw as well, notably in this court's determination that courts cannot impose joint and several liability for punitive damages:

> "Punitive damages are awarded to punish the wrongdoer. Each wrongdoer is liable to pay
> the punitive damages assessed against him or her. The amount of the award is to be

14

calculated with the individual defendant's financial status and conduct in mind. . . . Joint and several liability undermines these considerations and therefore is unavailable." *Printup*, 254 Kan. at 356.

Also, in *Koch v. Merchants Mutual Bonding Co.*, 211 Kan. 397, 507 P.2d 189 (1973), this court held a court could not require a surety company to pay punitive or exemplary damages without express statutory authority for doing so, explaining:

"Where exemplary damages are awarded for purposes of punishment and deterrence, as is true in this state, public policy should require that payment rest ultimately as well as nominally on the party who committed the wrong; otherwise they would often serve no useful purpose. The objective to be attained in imposing punitive damages is to make the culprit feel the pecuniary punch, not his guiltless guarantor." 211 Kan. at 405.

While these holdings and statutory provisions support a conclusion that punitive damages are limited to the wrongdoer unless a statutory exception applies, this does not fully answer the question. Here, the estate—consisting of the tortfeasor's assets—would pay the judgment. And as we have discussed, one reason an estate exists is to meet the financial obligations of a decedent, including damages that may result from legal claims against the decedent. See *Nelson*, 288 Kan. at 591. Further, until the wrongdoer's estate, including claims against it, is settled, heirs and third-party beneficiaries have only an inchoate—and perhaps unknown—interest.

We agree with the Pennsylvania Supreme Court's analysis of this argument in *G.J.D. by G.J.D. v. Johnson*, 552 Pa. 169, 713 A.2d 1127 (1998). That court rejected the proposition that allowing punitive damages would punish innocent beneficiaries of the estate. The court observed that "[t]he heirs of the decedent tortfeasor are in essentially the same financial position as if the tortfeasor were living at the time damages were awarded." 552 Pa. at 176. And perhaps more significantly, "To allow a tortfeasor's estate

15

to escape payment of punitive damages would be comparable to the injustice of allowing a defendant to transfer his wealth to his prospective heirs and beneficiaries prior to the trial of a case in which punitive damages are sought against him." 552 Pa. at 177.

In summary, we do not find any of the arguments asserted by Harvey's Estate to be determinative. And, our review of Kansas law—both as found in statutes and in caselaw—provides no clear resolution of the question of whether an injured party may seek punitive damages from a tortfeasor's estate. We therefore consider the two different approaches adopted in other jurisdictions. See Annot., *Claim for Punitive Damages in Tort Action as Surviving Death of Tortfeasor or Person Wronged*, 30 A.L.R. 4th 707.

### 1.2.    *Cases from Other Jurisdictions*

As we have noted, the first approach, sometimes identified as the majority approach, precludes recovery of punitive damages from a deceased tortfeasor's estate. By one count, when you remove the jurisdictions that have legislatively adopted the majority rule, 14 courts (13 states and the District of Columbia) have adopted this view. This count includes Kansas because a federal court had predicted Kansas would adopt the majority view. See *Fehrenbacher v. Quackenbush*, 759 F. Supp. 1516 (D. Kan. 1991). In contrast, nine states adopted the minority position by judicial decision. See Comment, *Adding Insult to Death:  Why Punitive Damages Should Not Be Imposed Against a Deceased Tortfeasor's Estate in Ohio*, 49 Akron L. Rev. 553, 564-65 (2016); see also Note, 47 U. Mich. J.L. Reform at 849-51.

Virtually all the cases consider the purposes of punitive damages and discuss whether imposing punitive damages on a deceased tortfeasor's estate will further the purposes of punishment and deterrence. See *Whetstone v. Binner*, 146 Ohio St. 3d 395,

397-98, 57 N.E.3d 1111 (2016) (discussing the different views). So, before discussing those cases, we will review the purposes recognized in Kansas.

In an early punitive damages decision, Chief Justice Samuel Kingman, writing for the court, declared punitive damages to "be not only good law, but founded on sound principles, and beneficial in its application. It often furnishes the only restraint upon a bad man, who cares little for his neighbor's character, his person, or his property." *Albert Wiley v. Keokuk*, 6 Kan. 94, 107, 1870 WL 463 (1870). Thus, from the beginning of statehood, this court has recognized deterrence or restraint as a justification for the imposition of punitive damages. And we find it significant that this court emphasized this purpose so early in our state's history. But this court also recognized that punitive damages can be a form of punishment. E.g., *Schippel v. Norton*, 38 Kan. 567, 572, 16 P. 804 (1888).

More recent cases clarified that the purpose of deterring bad conduct applied to both the tortfeasor (often called a specific deterrence) and others (called a general deterrence): "The express purpose of punitive damages is and has been *to punish the tortfeasor* and *to deter it and others* from committing similar wrongs in the future." (Emphases added.) *Printup*, 254 Kan. at 325; see *Koch*, 211 Kan. 397, Syl. ¶ 4 ("Exemplary or punitive damages go beyond actual or compensatory damages in that they are imposed, not because of any special merit in the plaintiff's case, but to *punish* the wrongdoer for his willful, malicious, oppressive or unlawful acts and to *deter and restrain others* from similar wrongdoings." [Emphases added.]). At times, this court has even said "the ultimate purpose" of punitive damages is "to restrain and deter others from the commission of similar wrongs." *Cerretti v. Flint Hills Rural Electric Co-op Ass'n*, 251 Kan. 347, 366, 837 P.2d 330 (1992); see *Hayes Sight & Sound, Inc. v. ONEOK, Inc.*, 281 Kan. 1287, 1324, 136 P.3d 428 (2006).

17

The current statute reflects the continuation of the common-law policies supporting punitive damages as expressed in Kansas cases, including:

"(1) The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct;

"(2) the degree of the defendant's awareness of that likelihood;

"(3) the profitability of the defendant's misconduct;

"(4) the duration of the misconduct and any intentional concealment of it;

"(5) the attitude and conduct of the defendant upon discovery of the misconduct;

"(6) the financial condition of the defendant; and

"(7) *the total deterrent effect* of other damages and punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, compensatory, exemplary and punitive damage awards to persons in situations similar to those of the claimant and the severity of the criminal penalties to which the defendant has been or may be subjected." (Emphasis added.) K.S.A. 60-3702(b).

The first six factors focus on the individual and his or her actions and relate to punishment as a basis for imposing punitive damages. But the seventh factor requires consideration of the deterrent effect by considering several factors. These reasons are consistent with the justifications provided in other jurisdictions. See Note, 47 U. Mich. J.L. Reform at 831-35. With that in mind, we turn to the decisions of the other courts.

The Iowa Supreme Court's decision in *In re Vajgrt*, 801 N.W.2d 570 (Iowa 2011), reflects the majority view. There, Bill Ernst, Inc. (Ernst) authorized Johnny Vajgrt to remove a fallen tree from its property. Vajgrt exceeded his authority, uprooting around 40 live trees. Vajgrt died before Ernst filed a claim, so Ernst pursued a claim against Vajgrt's estate.

Unlike Kansas, Iowa had decisions dating to 1884 in which the court had barred recovery of punitive damages when a tortfeasor died before judgment. The court

18

explained the rationale underlying the earliest case and reiterated it over time: "[B]ecause the role of punitive damages is punitive, rather than compensatory, such damages should not be awarded when the person to be punished has died." 801 N.W.2d at 573. As we have noted, in contrast, this court had recognized the deterrent effect of punitive damages in its early caselaw. Ernst also argued the court should overrule earlier cases based on the Iowa survival statute. The court found Ernst's position flawed. Among other things, the court noted—as this court stated in *Printup*, 254 Kan. at 323—that the survival statute allowed causes of action to survive death, but punitive damages are not a separate cause of action. But unlike Kansas, Iowa had a similar survival statute in place when the court had decided its earlier cases.

The Iowa court also found the Iowa punitive damage statute's silence on whether such damages survive a tortfeasor's death supported its conclusion—the earlier precedent existed when the Iowa Legislature enacted the statute, yet the Legislature did not overturn the court's holding. 801 N.W.2d at 574-75. The Iowa court then turned to the purposes for punitive damages: "(1) punishment, (2) specific deterrence, and (3) general deterrence." 801 N.W.2d at 575. The court rejected Ernst's argument that general deterrence warranted reversing earlier cases and applied Iowa's existing rule. 801 N.W.2d at 575.

Other cases following this approach have applied similar reasoning. E.g., *Doe v. Colligan*, 753 P.2d 144, 145-46 (Alaska 1988) (following rule of no recovery against estate because central purpose of punishment cannot be served and "general deterrent effect becomes speculative at best"); *Crabtree v. Estate of Crabtree*, 837 N.E.2d 135, 137-40 (Ind. 2005) (acknowledging central purpose is to punish and deter the wrongdoer, holding open the possibility of a different result if a tortfeasor appears to consider death as an escape from punitive damages); *Jaramillo v. Providence Washington Ins. Co.*, 117 N.M. 337, 345-46, 871 P.2d 1343 (1994) (holding punishment and deterrence not accomplished by allowing recovery against estate of tortfeasor). The Restatement

19

(Second) of Torts agrees. See Restatement (Second) of Torts §§ 908, comment a, 926 (1979). And, as we have noted, a federal court, focusing on the purpose of punishing the wrongdoer, has predicted that Kansas will follow the majority rule and not allow punitive damages if a tortfeasor has died. *Fehrenbacher*, 759 F. Supp. 1516. And the trial court and Court of Appeals agreed with that conclusion. *Alain Ellis Living Trust*, 53 Kan. App. 2d at 140-41.

For the counterpoint, Alain's Trust relies on the Pennsylvania decision in *G.J.D.*, 552 Pa. 169. There, G.J.D. sued Darwin Thebes who distributed sexually explicit photographs of her, including her name, phone number, and language suggesting she was a prostitute, after she ended their relationship. G.J.D. asserted various tort claims and sought punitive damages. Thebes committed suicide before trial, and the executrix of his estate was substituted as a defendant. The jury awarded compensatory and punitive damages to G.J.D. and her children. The Pennsylvania Supreme Court held the trier of fact should determine whether punitive damages are appropriate in a particular case. The court identified three reasons for its conclusion.

First, the court noted an important purpose for imposing punitive damages is to deter the tortious behavior—both on the part of the wrongdoer and on the part of others. The decedent's behavior was "egregious" and "[t]o the extent that it may reasonably be done, the law should be applied so as to have a deterrent effect on such conduct." 552 Pa. at 176. Thus, while the decedent would "not be punished or deterred from committing further perverse and egregious acts, the imposition of punitive damages upon his estate may serve to deter others from engaging in like conduct." 552 Pa. at 176. And while the court recognized the deterring impact of its decision was speculative, it concluded it was not more so "than in cases where the tortfeasor is alive." 552 Pa. at 176.

Second, the court rejected the proposition that allowing punitive damages would punish innocent beneficiaries of the estate. The court observed that "[t]he heirs of the decedent tortfeasor are in essentially the same financial position as if the tortfeasor were living at the time damages were awarded." 552 Pa. at 176. And perhaps more significantly (and thus warranting our repeating the point), "To allow a tortfeasor's estate to escape payment of punitive damages would be comparable to the injustice of allowing a defendant to transfer his wealth to his prospective heirs and beneficiaries prior to the trial of a case in which punitive damages are sought against him." 552 Pa. at 177.

Finally, the Pennsylvania Supreme Court noted that "safeguards exist to protect against the arbitrary imposition of punitive damages." 552 Pa. at 177. These safeguards include jury instructions that allow the jury to consider the reasons for imposing punitive damages, thus giving the jury the opportunity to determine whether its verdict would further the purposes of punitive damages. And "[t]he jury can then consider the value of the deceased tortfeasor's estate in arriving at a proper assessment of punitive damages. In the event the award shocks the conscience of the court, the trial court may grant a remittitur." 552 Pa. at 176-77.

Other jurisdictions cite *G.J.D* in reaching the same conclusion. E.g., *Haralson v. Fisher Surveying, Inc.*, 201 Ariz. 1, 3-6, 31 P.3d 114 (2001); *Estate of Farrell v. Gordon*, 770 A.2d 517, 521-22 (Del. 2001); *Kaopuiki v. Kealoha*, 104 Hawai'i 241, 260, 87 P.3d 910 (2003). Others independently reached the same result. E.g., *Tillett v. Lippert*, 275 Mont. 1, 909 P.2d 1158 (1996) (concluding that whether to assess punitive damages against tortfeasor's estate to set an example is a question for the trier of fact).

The Ohio Supreme Court recently addressed the different approaches in *Whetstone*, 146 Ohio St. 3d 395. *Whetstone* presented a different wrinkle because the defendant was still alive when the case was filed. In Kansas, this situation would fall

21

under K.S.A. 60-1802 ("No action pending in any court shall abate by the death of either or both the parties thereto, except an action for libel, slander, malicious prosecution, or for a nuisance."). But the Ohio court's reasoning is still applicable because it points out the injustice that results when a wrongdoer can put off or avoid the payment of damages.

In *Whetstone*, a mother sued her grandaunt who injured her five-year-old child while babysitting. The mother found the grandaunt with one hand on the child's neck and her other hand holding a pillow over the child's face. The grandaunt, who had cancer, failed to respond to the complaint. The court entered a default judgment and set an evidentiary hearing on damages, including punitive damages. The grandaunt then requested to reschedule the hearing because it conflicted with her scheduled treatment. The grandaunt died before the hearing. The trial court determined punitive damages could not be awarded against an estate, and the mother appealed.

The Ohio Supreme Court reversed this conclusion, holding the grandaunt's estate could be held liable for punitive damages because "[t]o hold otherwise would send a message that by delaying a damages hearing, a defendant or his or her estate might avoid the award of punitive damages." 57 N.E.3d at 1115-16.

Still other courts focus on statutory language the courts read as expressing legislative intent, even though the language may not directly address the effect of a death on a punitive damages claim. For example, the Delaware Supreme Court in *Gordon*, 770 A.2d at 521, approvingly quoted the reasoning of the Pennsylvania Supreme Court's decision in *G.J.D.*, 552 Pa. 169. But it also noted that, unlike Pennsylvania's survival statute, Delaware's statute contained specific limitations on recovery. "Had the General Assembly intended to exclude claims for punitive damages from recovery against the estate of a deceased tortfeasor, it could easily have done so. The omission is significant

22

and we are not inclined to engraft a further restriction by embracing the Restatement provision." *Gordon*, 770 A.2d at 522.

Ultimately, as this review of other jurisdictions shows, how we resolve our case hinges on how we view the purpose or purposes of punitive damages and what we can discern about legislative intent relating to the Kansas statutes. Some jurisdictions, like Iowa, have concluded imposing punitive damages against an estate does not serve the purpose of punishment. We agree with this concept. But we part company with those courts that conclude punitive damages do not serve the purpose of deterring unlawful conduct. The facts of this case suggest the opposite conclusion is warranted.

A trustee who believes the malfeasance can go undiscovered indefinitely, or at least until he or she is no longer alive, would not be restrained if courts could not impose postdeath punitive damages. And a trustee like Harvey, whose wife had recently died, may have viewed his death as only a matter of time and not some amorphous future inevitability. And the incentive may be even higher if the converted property is of the nature that makes it difficult to calculate actual damages—one of the reasons Alain's Trust argues the double damage provision relates to compensatory, not punitive, damages. But knowing the trustee will have to pay back embezzled or converted assets *and* face additional, punitive damages may dissuade trustees from engaging in illegal conduct. See *Whetstone*, 57 N.E.3d at 1115-16; see also *Crabtree*, 837 N.E.2d at 137-40.

We understand that some courts have concluded this deterrence is speculative. See *Fehrenbacher*, 759 F. Supp. at 1551-52 (citing a Minnesota case rejecting a similar argument as speculative). But like the Pennsylvania Supreme Court, we fail to see how the prospect is any more speculative when a defendant has died than when the defendant is still alive. We also find no basis to say that punitive damages deter the conduct of others when a tortfeasor is alive but that punitive damages do not deter another's conduct

if the tortfeasor has died. Instead, the knowledge that a trustee's estate will possibly have to pay punitive damages may restrain a trustee.

We also conclude that a trial court can weigh these considerations when deciding whether to allow a motion under K.S.A. 60-3703, and a jury can do so when considering the K.S.A. 60-3702(b) factors. The jury will know the trustee has died and that the party in the suit is his or her estate. Often, that will decrease—if not eliminate—the weight of many of the first six considerations. And that will leave for the jury the consideration of the overall deterrence effect. Weighing all the factors, the jury may determine that punitive damages are not appropriate—just as it did in this case with regard to Gulledge.

Most significantly, however, we discern an intent by the Legislature to allow an injured party to recover the same damages when a tortfeasor is dead as the injured party would recover if the tortfeasor were alive. The intent of the survival statute is best served when an injured party can bring the same cause of action and pursue the same remedies regardless of whether the tortfeasor is alive or dead. In addition, we agree with the reasoning of the Delaware Supreme Court in *Gordon*, 770 A.2d 522. It considered determinative the fact its Legislature had stated some exceptions to damage recovery in its survival statute but had not made an exception for deceased tortfeasors. We find it significant the Kansas Legislature created some exceptions to the availability of punitive damages in K.S.A. 60-3702. Like Delaware and other states, we would have to graft another exception onto the statute. The same is true with K.S.A. 58a-1002, which allows punitive damages without exception. In this context, the question is not whether to allow punitive damages but whether to extinguish damages the Legislature has authorized. And it is not an appropriate role for a court to add those words to any of the Kansas statutes without an indication of legislative intent, especially when doing so would limit a remedy the Kansas Legislature has allowed. See *Gray*, 306 Kan. 1294 (courts do not generally add words to statutes).

24

We hold that a trust and its beneficiaries with a cause of action for a trustee's breach of trust and breach of fiduciary duties may seek punitive damages from the estate of a deceased trustee under the procedures and requirements of K.S.A. 60-3702 and 60-3703. Here, we know the jury found a breach of trust and breach of fiduciary duty by the trustee. We do not know, however, whether a jury would have awarded Alain's Trust punitive damages. We, thus, remand for further proceedings.

2. *The plain language of the KUTC does not address whether a malfeasant trustee's estate can be made to pay double damages.*

We next consider the trial court's order granting the motion for partial summary judgment. In granting that motion, the trial court ruled that Alain's Trust could not recover double damages under the KUTC because of Harvey's death. The trial court and the Court of Appeals' panel relied on the rule adopted in other jurisdictions that penal damages do not survive the death of the tortfeasor. Because the issue on which partial summary judgment was granted was one of law and the material facts are undisputed, we review the decision de novo. See *Hockett v. The Trees Oil Co.*, 292 Kan. 213, 219, 251 P.3d 65 (2011).

Alain's Trust argues the trial court failed to apply the plain language of K.S.A. 58a-1002 and, instead, read into the statute a common-law rule that punitive damages do not apply to deceased defendants. Again, subsection (a) of that statute, provides that the trustee is liable for the greater of three measures of damages: (1) the amount necessary to restore the lost value; (2) the trustee's profits, or (3) "if the trustee embezzles or knowingly converts to the trustee's own use any of the personal property of the trust, the trustee shall be liable for double the value of the property so embezzled or converted."

And subsection (c) states that the allowance of those damages "shall not exclude an award of punitive damages."

Alain's Trust argues K.S.A. 58a-1002(a) sets minimum damage floors and allows accumulative damages—that is, "[s]tatutory damages allowed in addition to amounts available under the common law." Black's Law Dictionary 471 (10th ed. 2014). And no one disputes that (a)(3) provides the greatest damages here. Nor does Harvey's Trust argue before us that (a)(3) does not factually apply. Harvey's Trust did make this argument before the trial court. And the trial court, in ruling on summary judgment, held Harvey had not used any of the property he converted for his personal use, which meant that the criteria for awarding damages under (a)(3) had not been established. But the Court of Appeals disagreed, and Harvey's Estate did not cross-petition seeking our review of this ruling. See Supreme Court Rule 8.03(h)(1) (2018 Kan. S. Ct. R. 53); *Gray*, 306 Kan. at 1292-93 (noting this court would not consider a ruling adverse to the appellee without cross-petition for review). Thus, for our consideration, the factual applicability of (a)(3) is not disputed. The issue before us is one of the legal applicability and the meaning of (a)(3) and (c). Can they be applied when a trustee died?

Alain's Trust contends that K.S.A. 58a-1002(a)(3) is clear: The statute provides a trustee is liable for the greater of three damages and may be liable for punitive damages. The three provisions apply without qualification—it does not distinguish between trustees who are alive or those who are dead. Alain's Trust asks us to read the silence as authorizing both double and punitive damages against the trustee's estate, which in this case means Harvey's trust.

Harvey's Estate notes the lack of a reference to the trustee's estate, a point we have already determined we do not find persuasive. The Estate also argues it cannot be held responsible for penal damages.

We have addressed many of these arguments in the context of the punitive damages claim. And as we have stated before, we do not find the lack of a reference to the "trustee's estate" or the silence on the subject to be determinative. What may be determinative, however, is our ruling on the availability of punitive damages even after a tortfeasor has died. The parties vigorously argue about whether K.S.A. 58a-1002(a)(3) provides for remedial or penal damages, citing legislative history and cases in which they argue this court has found similar provisions penal and others where this court has found a similar damage provision remedial. Harvey's Estate points us to a very apt quotation from the United States Supreme Court decision in *PacificCare Health Systems, Inc. v. Book*, 538 U.S. 401, 123 S. Ct. 1531, 155 L. Ed. 2d 578 (2003). There, Justice Antonin Scalia, writing for a unanimous Court, observed: "Our cases have placed different statutory treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards." 538 U.S. at 405. The same statement applies to Kansas cases.

We need not sort through the implications of these various decisions here, however, if our decision that trust beneficiaries may seek punitive damages after a trustee's death applies to the double damage provision. As we have discussed, that decision rests, in part, on the purposes of punitive damages, including the dual penal and deterrence effects. Harvey's Estate presents us with no argument regarding why the penal nature of a double damage award would present reasons we would depart from our analysis of the punitive damage issue.

We have said that double damages—when they are penal in nature—serve the same purposes as do punitive damages. As with punitive damages, this court has observed a long history exists, "'dating back over 700 years and going forward to today, providing for sanctions of double, treble, or quadruple damages *to deter and punish*.'"

27

(Emphasis added.) *Hayes Sight & Sound, Inc.,* 281 Kan. at 1315-16 (quoting *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 155 L. Ed. 2d 585 [2003], and citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 581 and n.33, 116 S. Ct. 1589, 134 L. Ed. 2d 809 [1996]).

Thus, assuming the double damage provision of K.S.A. 58a-1002(a)(3) is penal rather than remedial, its penal nature would also serve the purpose of deterring malfeasance. As a result, there is no basis for concluding a different result should apply to the double damage provision than we have reached for punitive damages, especially given that our other reasons for reaching that decision, including our statutory construction, would apply.

We thus hold that the trial court should have allowed Alain's Trust to pursue double damages under K.S.A. 58a-1002 even though the trustee had died. Thus, the trial court erred in granting the partial summary judgment.

Alain's Trust argues we can enter judgment and declare the amount of damages that should be awarded. But Harvey's Estate presented issues to the trial court and the Court of Appeals that neither court addressed—issues those courts did not need to reach because of the ruling that Alain's Trust could not recover double damages against Harvey's Estate. In these issues, Harvey's Estate argued Alain's Trust could not recover these damages because of K.S.A. 58a-505 and 58a-507. It also argued that questions remained about what amount would be doubled—the difference between the amount the judgment exceeded the amount returned to Alain's Trust or some other number. The rules relating to petitions for review applicable when Alain's Trust sought review provided: "In civil cases, the Supreme Court may, but need not, consider other issues that were presented to the Court of Appeals and that the parties have preserved for review." Supreme Court Rule 8.03(h)(1) (2018 Kan. S. Ct. R. 56); *Troutman v. Curtis*, 286 Kan.

28

452, 452-53, 185 P.3d 930 (2008). Here, we decline to address the issues not considered by the lower court. The parties have presented minimal appellate arguments on these issues, merely seeming to seek to preserve them for further consideration. And we must remand for further proceedings because of our ruling on the punitive damages issue. Plus, Harvey's Estate asserts that factual issues remain, and appellate courts do not make factual determinations. Hence, we remand for consideration of any remaining issues and the calculation of the damages.

CONCLUSION

Because we determine the district court and the Court of Appeals' panel erred in concluding Kansas law did not allow consideration of punitive and double damages because of Harvey's death, we remand to the district court for further consideration of its two rulings based on this decision.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded to the district court for further proceedings.

BEIER, J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:**  Senior Judge Malone was appointed to hear case Nos. 113,097, 113,282 vice Justice Beier under the authority vested in the Supreme Court by K.S.A. 20-2616.